Kenneth R. YOTT, Plaintiff,

v.

NORTH AMERICAN ROCKWELL CORPORATION and International Union United Automobile, Aerospace and Agricultural Implement Workers of America, Local Union No. 887, Defendants.

Civ. No. 71–1418–R.

United States District Court,
C. D. California.

Jan. 7, 1977.

Supplemental Opinion Jan. 10, 1977.

Stuart P. Herman, Beverly Hills, Cal., Dalford Todd, Dallas, Tex., for Yott.

Robert N. Kohn, Rockwell International Corp., El Segundo, Cal., for North American Rockwell.

Matthew Biren, Los Angeles, Cal., for UAW.

## OPINION AND JUDGMENT

REAL, District Judge.

This matter came on for trial after remand from the Court of Appeal for the Ninth Circuit, *Yott v. North American Rockwell Corporation*, 501 F.2d 398 (9th Cir. 1974).

Plaintiff Kenneth Yott (hereafter Yott) entered his employment with defendant North American Rockwell Corporation (hereafter Rockwell) in February 1947. During his employment he held the classification of Office Equipment Mechanic.

During Yott's employment with Rockwell and up to October 6, 1968, Rockwell and defendant International Union United Automobile, Aerospace and Agricultural Implement Workers of America, Local Union 887 (hereafter Union) were signatories to a collective bargaining agreement which contained no requirement that an employee in the collective bargaining-unit (including Yott) either be a member of Union or pay dues to Union.

Effective October 6, 1968, the collective bargaining agreement between Rockwell and Union for the first time provided for so-called "union security" with the inclusion of Article II.

Implementation of Article II Union Security required: 1. membership in Union, or 2. the payment of dues to Union by those employees within the bargaining-unit who did not want to obtain active membership in Union.

After October 6, 1968, Yott was given notice that he must comply with the collective bargaining requirement or be terminated. Yott, claiming that religious beliefs prohibited him from membership in any union or other temporal organization or from the payment demanded by the collective bargaining agreement, refused either compliance with the terms of Article II or the contribution of an equivalent amount to a charitable or religious organization which included his own church. Pursuant to the terms of the collective bargaining agreement, Yott was terminated by Rockwell on January 14, 1969.

Yott filed charges with the California Fair Employment Commission and Equal Employment Opportunity Commission

charging religious discrimination in his termination in violation of Title VII, Section 706(b) of the Civil Rights Act of 1964, as amended 78 Stat. 241, 42 U.S.C. § 2000e *et seq.*

Yott has timely filed suit in this Court requesting injunctive relief enjoining defendants from enforcing Article II of the collective bargaining agreement of October 6, 1968 (and any renewals thereof). He also seeks reinstatement to his position with seniority rights and salary at least equal to the salary he was earning on January 14, 1969.

During trial there was concession by defendants that Yott sincerely held religious beliefs prohibiting his membership in Union.

Yott, for the first time at trial, suggested to defendants that he would accept as "accommodation" to his religious beliefs any one of three alternatives—1. that he be given a job outside the bargaining-unit, or 2. that he be exempted from the union security clause, or 3. he be reinstated at his old job at a lower rate of pay permitting Rockwell to dispose of the difference as it saw fit (presumably to pay Union its dues for Yott's job pursuant to Articles II and III of the collective bargaining agreement of October 6, 1968 (and any renewals thereof)).

Defendants claim that the accommodations offered by Yott are not reasonable because—1. they are illegal, or 2. even if legal the transfer to a non-unit job could only be temporary because of the organizing efforts of Union. Defendants also claim that Section 701(j) violates the First Amendment of the United States Constitution.

THE CONSTITUTIONALITY OF TITLE VII, SECTION 701(j) OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. § 2000e(j)]

42 U.S.C. § 2000e(j) provides:

1. Justice Stephens did not participate.

2. "Accommodate" within the context of § 2000e(j) means either 1. to adapt; to make it

(j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . religious observance or practice without undue hardship on the conduct of the employer's business.

Defendants claim that the provision of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(j), violates the establishment clause of the First Amendment of the United States Constitution. In answer to defendants' attack on the constitutionality of § 2000e(j), plaintiff urges the Court to follow the majority opinion in *Cummins v. Parker Seal Company*, 516 F.2d 544 (6th Cir. 1975). The dilemma is not solved that easily. The analysis of the majority in *Cummins* (supra) does not persuasively resolve the problem nor is the majority's resolution helped by the 4–4 [1] affirmance of the United States Supreme Court. *Cummins v. Parker Seal Company*, 429 U.S. 65, 97 S.Ct. 342, 50 L.Ed.2d 223 (1976).

Religious freedom and a secular governmental approach to religious institutions are guaranteed by the First Amendment which provides in pertinent part:

AMENDMENT I

". . . Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . ."

The determination of whether or not § 2000e(j) comports with the absolute prohibition upon Congress' power to enact laws affecting the establishment of religion requires the Court to first look at just what it is § 2000e(j) does. The language of the statute enjoins an employer to "accommodate" [2] employment practices to the religious beliefs of his employee. That the Congress limited the accommodation to a "reasonable" imposition upon the employer's business is not important when the

fit, suitable or congruous; or 2. to bring into agreement or concord. Webster's Third New International Dictionary Unabridged (1967).

measure of First Amendment prohibition is expressed in positive terms of "no law." Clearly then, the statute imposes on an employer the requirement that he adopt or bring into agreement his otherwise non-discriminatory business conduct with the religious beliefs of his employee. If the import of § 2000e(j) can be so simply stated it is because its clear and unambiguous language leaves no other choice.

So simplistic a resolution of a serious constitutional attack may seem inappropriate in light of the majority holding in *Cummins* (supra). But *Cummins* (supra) is unpersuasive for several reasons.

The majority of the Court of Appeals in *Cummins* (supra) supports its decision as to the constitutionality of § 2000e(j) by ascribing to it an adequate secular purpose when it says:

> The reasonable accommodation rule, like Title VII as a whole, was intended to prevent discrimination in employment. Specifically, *the rule was designed to put teeth in the existing prohibition of religious discrimination.*

516 F.2d at 552 (emphasis added). Realistically nothing could be farther from the truth. Discrimination in employment is prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(j) *et seq.*, and more particularly 42 U.S.C. § 2000e–2(a)(1). No other expression of Congressional desire was and is necessary to declare unlawful a discriminatory act by an employer against an employee based upon the employee's religious belief. "Teeth" are put into the law by a comprehensive enforcement system which includes action by the Equal Employment Opportunity Commission and the Attorney General of the United States. To guarantee effective enforcement the statutory scheme provides for a civil action by the individual employee aggrieved by discriminatory conduct of an employer. 42 U.S.C. § 2000e–5(f)(1), (g)(k).[3] To ascribe, (as a majority in *Cummins* (supra) does), to

the language of Senator Randolph (who proposed the amendment, i. e., § 2000e(j)), a secular purpose to put teeth into such a comprehensive statutory scheme is pure sophistry.[4]

Although recognizing the distinctions which exist between the present case and the Supreme Court's decision in *Gillette v. United States*, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) approving the draft exemption statute, 50 U.S.C.App. § 456(j), the majority in *Cummins* (supra) ascribes the rationale of *Gillette* (supra) as applicable to its decision. However, one may wish to read *Gillette* (supra): the rationale that would circumscribe the exercise of governmental power to conscript for national security purposes can hardly be applied to the Congressional decision that the religious beliefs of an employee are paramount to the nondiscriminatory business practice of an employer—each of whom are individually entitled to the same protection of the First Amendment prohibition against establishment of religion *and* the free exercise of the religious persuasion of his individual choice.

The conflict presented by the implementation of § 2000e(j) can best be demonstrated by an example. The excuse of an employee from union membership or the payment of union dues as a condition of employment *because* of his religious objection affords that employee a privilege not otherwise available to those employees whose religious beliefs or lack of religious beliefs provide no such excuse. For instance, employee "A" may harbor political beliefs every bit as strong and compelling as Yott's unquestioned religious objections to union activity; yet, employee "A" cannot qualify for the required accommodation of § 2000e(j) claimed by Yott. Given the same evidence the reasonableness of the accommodation that would be required of an employer is indistinguishable between employee "A" and Yott. The only reason ascribed

**3.** Relief in actions brought pursuant to these sections includes injunction, reinstatement to employment, backpay and a reasonable attorney's fee.

**4.** Compare the language of Senator Randolph cited by Judge Celebrezze in his dissenting opinion in *Cummins* (supra), at 558.

by § 2000e(j) for its application to Yott and not employee "A" is religion vs. politics.

Concededly, as beauty is in the eye of the beholder, so the approach a particular Court may take to the expression of a legislative purpose can lead to opposite results. The First Amendment allows no such choice. Government simply cannot make the choice—termed reasonable or otherwise— that conduct which lacks either discriminatory intent or discriminatory application can be circumscribed because religious beliefs may oppose its implementation. Faced with such a decision government must declare its neutrality. That neutrality may result in a sacrifice from the individual who adheres sincerely to his religious beliefs. Such sacrifice is, however, self-imposed with the rewards being measured outside our temporal ken. However well-intentioned governmental action may be in an attempt to alleviate this sacrifice it cannot survive the clear command of the First Amendment and its interpretation by the Supreme Court in *Committee for Public Education v. Nyquist*, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973).

Nor does the Supreme Court's approval of state imposed Sunday closing laws in *Gallagher v. Crown Kosher Super Market*, 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961); *Braunfeld v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961); *Two Guys v. McGinley*, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), support the rationale of the majority in *Cummins* (supra) on the constitutionality of § 2000e(j). In those cases the Supreme Court anchored its decision on the firm ground that the purpose of Sunday closing laws—though historically grounded in religious principles—has in modern times come from the clearly demonstrated state interest to provide "a uniform day of rest for all citizens." *McGowan* (supra), 366 U.S. at 445, 81 S.Ct. at 1115. § 2000e(j) demonstrates no comparable legitimate governmental purpose.

The Court finds that 42 U.S.C. § 2000e(j) is an unconstitutional enactment because of its conflict with the establishment clause of the First Amendment of the United States Constitution.

Pursuant to Rule 52(a), Federal Rules of Civil Procedure, this opinion shall be deemed to be the Findings of Fact and Conclusions of Law.

The Clerk is ordered to enter judgment for the defendants together with their costs of suit.

## SUPPLEMENTARY OPINION

Because this case is subject to appellate review which may or may not support the views of this Court upon the constitutionality of 42 U.S.C. § 2000e(j), and in order to obviate the necessity of retrial of other issues presented to the Court this supplementary opinion is now filed.

Defendants have raised issues at trial each of which require separate determination.

1. IS DEFENDANTS' CONDUCT EXCUSED BY REASON OF TITLE VII, § 713(b) OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. § 2000e–12(b)]?

Title 42 U.S.C. § 2000e–12(b) provides in its pertinent part:

§ 2000e–12 Regulations; conformity of regulations with Administrative Procedure Act; reliance on interpretations and instructions of Commission.

(a) * * *

(b) In any action or proceeding based on any alleged unlawful employment practice, no person shall be subject to any liability or punishment for or on account of (1) the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission, . . . Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that (A) after such act or omission,

such interpretation or opinion is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect, . . .

On January 26, 1967 Richard Berg, as Acting General Counsel of the Equal Employment Opportunity Commission (hereafter EEOC), published an opinion which provided in its pertinent part:

"I do not believe it would be appropriate to read Title VII to make the enforcement of a union shop agreement a case of religious discrimination simply because the terms of the agreement impinge upon an occasional employee's religious convictions."

Mr. Berg's letter was released for publication by the EEOC to the Bureau of National Affairs (hereafter BNA) and Commerce Clearing House (hereafter CCH).[1] Both BNA and CCH published Mr. Berg's letter as an "Opinion of EEOC General Counsel." The EEOC acquiesced in this characterization of Mr. Berg's letter from 1967[2] to 1970 when the EEOC published in the Federal Register on December 9, 1970 a notice in effect withdrawing from the position stated by Mr. Berg.

In 29 C.F.R. § 1601.30 the EEOC set forth a procedural definition of the § 2000e–12(b) requirement that reliance must depend upon "any written interpretation or opinion of the Commission" by adopting two forms of commission opinion—1. a letter entitled "Opinion Letter" and signed by the General Counsel on behalf of the Commission, or 2. matter published and so designated in the Federal Register.

Measured by objective standards Mr. Berg's letter as published in BNA and CCH qualified as an EEOC opinion as delineated in 20 C.F.R. § 1601.30.

■ Plaintiff claims that even if Mr. Berg's letter should qualify as a commission opinion, defendants had no right to rely upon it because it was not requested by or addressed to them. The simple answer to that contention is that § 2000e–12(b) cannot be read to permit only an addressee[3] to be the beneficiary of commission opinion. If the shoe is 10½E, any 10½E foot may wear it. Standing to assert the defense is granted by § 2000e–12(b), and the EEOC cannot by regulations or otherwise put a limitation on who can claim the section's benefits.

■ Plaintiff also urges upon the Court the opinion in *Sprogis v. United Air Lines*, 444 F.2d 1194 (7th Cir. 1971) cert. den. 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971) as authority that Mr. Berg's letter does not qualify as commission opinion under C.F.R. § 1601.30. Plaintiff's reliance upon *Sprogis* (supra) as controlling the decision in this matter is misplaced. *Sprogis* (supra) was decided by the 7th Circuit upon factual findings not present here. The facts of *Sprogis* (supra) cannot be used to support a finding that Mr. Berg's letter does not qualify as commission opinion.

Even though the Court finds that Mr. Berg's letter qualifies as commission opinion and defendant's reliance was reasonable the inquiry cannot be concluded there. § 2000e–12(b) makes the defense available against "any liability or punishment." That defense is limited to the award of damages or back pay. *Rosenfeld v. Southern Pacific Co.*, 9 Cir., 444 F.2d 1219, 1227 (1971).

Assuming for the purpose of this portion of the decision the constitutionality of 42 U.S.C. § 2000e(j), Yott may still be entitled to injunctive and declaratory relief together with costs and attorneys' fees if he should prevail upon the accommodation issues hereinafter considered.

2. ACCOMMODATION—BURDEN OF PROOF — REASONABLENESS — UNDUE HARDSHIP.

42 U.S.C. § 2000e(j) provides in its pertinent part:

---

1. Each of these publishing firms have publication services devoted to the dissemination of current legislative administrative and judicial actions relevant to specific areas of the law.

2. The date of publication of Mr. Berg's letter.

3. Plaintiffs claim 35 Fed.Reg. 18692 (1970), limits use of commission opinion to addressees.

(j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . without undue hardship on the conduct of the employer's business.

█ Although not expressly stated in § 2000e(j) the language appears to divide that burden of proof into two aspects—

1. The plaintiff has the burden of proving that he has offered to the employer an accommodation which is acceptable to him (the employee). *Yott v. North American Rockwell Corporation*, 501 F.2d 398, 403 (9th Cir. 1974); and

2. The employer has the burden of demonstrating that the suggested accommodation will create an undue hardship.

Plaintiff has for the first time during the trial of this matter made an offer of some accommodations that would be compatible to his religious beliefs. These accommodations are—1. provide plaintiff with a job outside the bargaining unit, or 2. exempt plaintiff from the union security clause, or 3. allow plaintiff to return to his former position at less pay.

No one can deny that respect for individual religious beliefs was and is one of the most important marks of our freedom. The First Amendment guarantees freedom to believe and to practice, but it cannot measure the sacrifices which that belief and practice may require. The measure has been left to congressional vigilance and action. In matters of the conflict between employer and employee over religious beliefs the measure has been reduced to reasonable accommodation. When disagreements arise courts are given the responsibility to resolve what is and what is not reasonable.

Just as Congress has mandated reasonable accommodation of religious beliefs it has given employees and unions the right to bargain and to protect their bargains by an elaborate scheme of administrative and judicial procedures.

The task is not an easy one. The balance between the compulsion of religious beliefs and the equally precious mark of our freedom—equality under the law—is most delicate.

█ It is this balance the Court proposes to attempt to strike in its consideration of plaintiff's tendered accommodations.

### A. NON–BARGAINING UNIT JOB.

Plaintiff offers the accommodation that he be placed in a non-bargaining unit job.

Reasonableness must be measured by the realities of the labor situation at defendant Rockwell's plant. Defendant Union has offered evidence that defendant Rockwell is the target of continued efforts to organize *all* employees. Other union organizations are also attempting footholds for expansion of union organizing efforts with defendant Rockwell.

Given these facts it would appear to the Court that accommodation would be at best only temporary. Without more the Court can make no finding that the offer of this accommodation is reasonable.

Further the Court lacks evidence of what jobs exist in the so-called "non-bargaining unit" and more importantly whether plaintiff would accept *any* of those jobs.

### B. EXEMPTION FROM THE BARGAINING UNIT.

Exemption is not accommodation. Exemption would require defendant Union to forego the implementation of its statutory authority to provide for a "union shop." In *Yott* (supra) the Ninth Circuit [4] detailed the constitutional validity and congressional purpose of union security clauses. That discussion need not be repeated here. It is sufficient to say that it disposes of plaintiff's offered accommodation of exemption.

### C. RETURN TO FORMER POSITION AT LESS PAY.

This offered accommodation cannot be reasonable as to defendant Union because

4. 501 F.2d 398 at 403–04 (1974).

implementation of this accommodation could make defendant Union subject to suit for failure to observe the fair representation requirements of the National Labor Relations Act.

For defendant Rockwell and for plaintiff this alternative is even more serious. As considered heretofore, any exemption from the union security provisions of the collective bargaining agreement cannot be required of defendants. To accomplish this offered accommodation defendant Rockwell must pay—on behalf of or for the benefit of plaintiff—union dues. This payment is income to plaintiff accountable both by plaintiff and defendant Rockwell under the Internal Revenue Code.

Moreover accommodation runs afoul of California Labor Code § 200 *et seq.*

Any consideration of this accommodation must bring the realization that without concessions to his expressed religious beliefs plaintiff cannot make this accommodation viable.

This opinion shall be deemed to be the Findings of Fact and Conclusions of Law upon the issues presented herein as provided in Rule 52(a) Federal Rules of Civil Procedure.

Judgment shall be entered accordingly.