David ANDERSON, Plaintiff,

v.

GENERAL DYNAMICS CONVAIR AEROSPACE DIVISION, a corporation, and International Association of Machinists and Aerospace Workers, AFL–CIO, Silvergate District Lodge 50, an Association, Defendants.

No. 75–0857–S.

United States District Court,
S. D. California.

Feb. 15, 1977.

Kevin J. McInerney, San Diego, Cal., for plaintiff.

Ward W. Waddell, Jr., San Diego, for defendant, General Dynamics.

Douglas F. Olins, San Diego, Cal., for defendant, Union.

DENNEY, District Judge.[1]

This matter is before the Court for determination on the merits, subsequent to trial to the Court on February 2, 1977, and the submission of post-trial briefs. In accordance with Fed.R.Civ.P. 52(a), the Court makes the following findings of facts and conclusions of law.

I.

Plaintiff, David Anderson, instituted this action on October 3, 1975, pursuant to Title VII of the 1964 Civil Rights Act, against General Dynamics Convair Aerospace Division [hereinafter referred to as General Dynamics] and Silvergate District Lodge 50, International Association of Machinists and Aerospace Workers, AFL–CIO [hereinafter referred to as the Union]. The Court has jurisdiction under the provisions of 42 U.S.C. § 2000e-5(f) et seq., as amended March 24, 1972, and 28 U.S.C. § 1343(4).

This case involves the termination of plaintiff by General Dynamics pursuant to the request of the Union, for his failure to join or contribute to the Union. Plaintiff claims a violation of Title VII of the Civil Rights Act of 1964, as amended, based upon defendants' failure to accommodate his religious beliefs. Plaintiff seeks reinstatement of employment and benefits, an injunction restraining the Union from discriminating against him, back pay and allowances, reasonable attorney's fees, costs and interests.

Anderson was employed on a regular basis by defendant, General Dynamics, from October 11, 1956, until June 16, 1972. At the time of his termination, plaintiff was a process tank loader and tender.

Since 1959, Anderson has been a member of the Seventh Day Adventist Church. Between 1959 and April 3, 1972, the collective bargaining agreement between defendants did not require General Dynamics to employ only those persons who were members of the Union. On April 3, 1972, the Union entered into an employment contract on behalf of represented employees with General Dynamics. Article 9, Paragraph B of the Agreement, provided as follows:

Any employee on the company's active payroll who is in the bargaining unit and is not a member of the Union on 3 April, 1972, shall, as a condition of continued employment in the bargaining unit, join the Union within ten (10) days after the thirtieth (30th) day following the effective date of this agreement, and shall maintain his membership as provided in Paragraph A above.

It is a tenet and principle of the Seventh Day Adventist Church, that its church members should not belong to any monopolistic business enterprise. Although the decision not to join or support a labor organization is left to the individual church member, Anderson has at all material times adhered to the conviction that joining or contributing to a labor union violates the principles and tenets of the Church. Anderson therefore did not join the Union within the time prescribed by the Union security clause.

On May 25, 1972, the Union notified plaintiff as to his delinquency relative to the requirements of the Union security provisions. Thereafter, on June 12, 1972, Anderson informed General Dynamics, who in turn informed the Union, that his religious beliefs prohibited him from joining the Union.[2] Two days later, the Union sent a letter to General Dynamics requesting that plaintiff be discharged for failure to join the Union. On or about June 14, 1972, upon receiving notice that he would be terminated unless he joined the Union, plaintiff again informed General Dynamics that his religious convictions would not allow him to join the Union. The parties have stipulated that neither defendant "offered any specific alternatives or accommodations with re-

---

1. United States District Judge, District of Nebraska, sitting by designation.

2. Exhibit D–1.

spect to joining the Union. Mr. Anderson was informed by both defendants that he had to follow the collective bargaining agreement and join the Union."[3]

On September 27, 1972, Anderson filed a Charge of Discrimination against both defendants with the Equal Employment Opportunity Commission. On November 6, 1972, the Commission deferred the complaint to the California Fair Employment Practice Commission. The matter was referred back to the Commission on December 6, 1972, and on April 12, 1974, decision was entered finding reasonable cause to believe that plaintiff's charge of discrimination was true and that plaintiff was entitled to relief. On July 15, 1975, the Commission notified plaintiff that conciliation efforts had failed and a "Notice of Right to Sue Within 90 days" was received by plaintiff on October 14, 1975.

## II.

The principal issue before the Court is whether the defendants could have accommodated plaintiff's religious beliefs without undue hardship on their businesses.[4]

At the outset, it should be noted that Congress has sanctioned union security agreements as an integral part of our labor relations policy. The National Labor Relations Act, as amended by Section 8(a)(3) of the Labor Management Relations Act (Taft-Hartley Act), 29 U.S.C. § 158(a)(3), provides in relevant part:

> [N]othing in this subchapter . . . shall preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment.[5]

3. Pre-trial Conference Order § 2, ¶ 21.

4. Although both defendants have raised in their answers several legal defenses as a bar to plaintiff's action, the Court deems such defenses abandoned for failure to brief the issues pursuant to the Local Rules of the Southern District of California.

5. Although plaintiff argued in his pre-trial brief that Section 8(a)(3) sanctions only agency

42 U.S.C. § 2000e-2(a) provides in part as follows:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin; . . . . .

42 U.S.C. § 2000e-2(c) provides in relevant part as follows:

> It shall be an unlawful employment practice for a labor organization—
>
> . . . . .
>
> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this Section.

In 1972, Congress enacted 42 U.S.C. § 2000e(j) which incorporated the substance of the 1967 E.E.O.C. guidelines found at 29 C.F.R. § 1605.1:

> The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's religious observance or practice without undue hardship on the conduct of the employer's business.

Although Section 8(a)(3) of the NLRA and Title VII collide in cases such as presented herein, the Ninth Circuit has held that when a union security clause conflicts with freedom of religion, reasonable accommodation is required. *Yott v. North American Rockwell Corp.*, 501 F.2d 398, 402 (9th Cir. 1974). This Court is therefore squarely presented with the difficult task of balancing the rights and interests of the parties.

shops and not union shops, this contention was withdrawn at pre-trial conference. The parties have agreed that the union security clause is valid and consistent with Section 8(a)(3) of the NLRA in that union membership is not a condition for acquiring employment, but merely a condition of continued employment. (Pre-trial Conference Order § III, ¶ 13). *See N.L.R.B. v. General Motors Corp.*, 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963).

Defendants initially argue that plaintiff has failed to meet his burden of proof, inasmuch as he did not offer General Dynamics any suggested accommodation prior to termination. Although defendants correctly state that Judge Manuel Real placed the burden of initiating accommodations discussions with the employee in *Yott v. North American Rockwell*, 428 F.Supp. 763 (C.D.Cal.1977) (on remand), the Ninth Circuit specifically held in *Yott* that "if a reasonable accommodation can be reached between the parties, it must be offered appellant Yott . . . ." 501 F.2d at 402, n. 6. On the other hand, plaintiff argues that he is entitled to judgment as a matter of law, since it is stipulated that neither defendant tendered plaintiff an offer of accommodation.[6]

The Court is impelled to reject the contentions of both parties. The controlling question does not turn on subtle procedures which require a party to come forward with an offer of accommodation prior to termination;[7] the touchstone of religious discrimination under the Act is whether a reasonable accommodation can, in fact, be reached between the parties without undue hardship. It would be anomalous to compel an employer and union to accommodate an employee's religious beliefs, regardless of hardship, simply because the employer failed to offer the employee any accommodations prior to his termination, regardless of whether, in fact, a reasonable accommodation is available. This result would not only be contrary to logic, but in direct conflict with the statutory command which exonerates "an employer who demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

The parties have stipulated that Anderson "had made known to his fellow workers, including his shop committeeman, the fact that he would not join and/or support the Union except if he could insure that his contributions went to a recognized charity that met with his approval.[8] Plaintiff testified that he told the Union committeeman, Joe Mattson, prior to his termination that he did not mind paying the equivalent of Union dues if he could give it directly to a charity. Plaintiff further stated that he would not make payments for a charity to the Union because he doesn't trust unions. The following statement from Anderson's deposition is particularly relevant:

> Anyhow, the committeeman told me, "what about, you know, paying union"— not paying union dues, less so much of my money be taken out of my check and go to charity. And I told him the same thing I'm telling you now, that they tells you that but they don't do that. So I told him, "I don't mind paying the union dues or paying the fee in the same amount, but I would not, you know, let the union do it.[9]

In *Yott v. North American Rockwell Corporation, supra,* the Ninth Circuit reversed the dismissal of plaintiff's complaint and remanded the case to the district court for a determination of whether a reasonable accommodation without undue hardship could be reached. In a footnote, the court described the remand:

> [W]e leave analysis of whether the "business necessity" test would be met for the District Court's determination. We are certain that the court will keep in mind

---

**6.** The Eighth Circuit held in *Hardison v. Trans World Airlines, Inc.,* 527 F.2d 33, 39 (8th Cir. 1975) *cert. granted* 429 U.S. 958, 97 S.Ct. 381, 50 L.Ed.2d 325 (1976), "[b]efore an employer can assert the defense of non-cooperation, it is incumbent upon it to establish the accommodation which it has tendered and with which the employee refused to cooperate."

**7.** A common sense interpretation of the Act dictates a conclusion that the employer is required to initiate a conference with employee prior to termination to discuss possible accommodation to the employee's religious beliefs. An acceptance of defendants' position would defeat the conciliation powers of the Commission. *See* 29 C.F.R. § 1601.22.

**8.** Pre-trial Conference Order, § III, ¶ 25.

**9.** Deposition III: 20–26.

that the purpose of a union security clause is to insure that all who receive the benefits of the collective bargaining agreement pay their fair share. "Free riders" are discouraged. In effect, stability is promoted by reducing potential labor strife, thus increasing the efficient operation of the business. 501 F.2d at 402, n. 6.[10]

Although the law in some circuits is unsettled as to whether hardship to the union, as well as to the employer, can be considered,[11] the law in this circuit mandates that the inquiry on hardship include hardship to the union. *Yott v. North American Rockwell Corp., supra* at 403.

In consideration of the above authorities and the interests of the parties, the Court must conclude that anything less than payment of the equivalent of dues to the Union for charitable purposes would impose an undue hardship on the Union. Non-payment of dues or the equivalent deprives the Union of money needed in order to negotiate on behalf of employees and to which it is entitled for services rendered.[12] Plaintiff's refusal to give the equivalent of dues to the Union to be earmarked for a recognized charity of his own selection was based on his general distrust of unions, rather than on religious beliefs. The willingness of plaintiff to pay money directly to a charity does not eliminate "free riders."[13] The overriding interest of the Union in carrying out its bargaining function with sufficient funds makes an accommodation impossible, given plaintiff's unyielding position.[14]

Since the Court holds that an accommodation is impossible under the circumstances of this case, it is unnecessary to reach

10. The court also expressed doubt as to whether any accommodation was available, upon the assumption that appellant, like Anderson, may not desire to pay an amount equal to union dues to the union.

11. *See*, e. g., separate opinions or Judge Gee, Judge Brown and Judge Rives, in *Cooper v. General Dynamics, Convair Aerospace Division,* 533 F.2d 163 (5th Cir. 1976).

12. Although not dispositive, the Court notes that plaintiff has on two occasions utilized the

defendants' claim that Title VII violates the Establishment Clause of the First Amendment.

Judgment shall be entered for defendants.

Union's grievance procedure to secure reinstatement in 1962 and 1968 when terminated because he refused to work on the Sabbath of his church.

13. *See* S.Rep.No.105 on S. 1126, 80th Cong. 1st Sess. 7 (1947).

14. It should be noted that the Union donates money to charities in the amount of approximately 36¢ per year for each member.