Robert A. WONDZELL, Appellant,

v.

ALASKA WOOD PRODUCTS, INC., and Lumber Production and Industrial Workers Local 2362, Appellees.

ALASKA WOOD PRODUCTS, INC., and Lumber Production and Industrial Workers Local 2362, Cross-Appellants,

v.

Robert A. WONDZELL and the Alaska State Commission for Human Rights, Cross-Appellees.

Nos. 2792, 2804.

Supreme Court of Alaska.

Sept. 15, 1978.

Robert H. Wagstaff and R. Collin Middleton, Wagstaff & Middleton, Anchorage, for appellant/cross-appellee Wondzell.

Carolyn E. Jones, Asst. Atty. Gen., Anchorage and Avrum M. Gross, Atty. Gen., Juneau, for appellant/cross-appellee Alaska State Commission for Human Rights.

M. T. Thomas, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellee/cross-appellant Alaska Wood Products.

Bernard Jolles, Franklin, Bennett, Ofelt & Jolles, Portland, Or., and Stephen J. Pearson, Ely, Guess & Rudd, Juneau, for appellee/cross-appellant Lumber Production and Industrial Workers Local 2362.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

This case brings before us the conflict between a "union shop" agreement and the religious beliefs of a worker whose Seventh-Day Adventist faith forbids affiliation with a labor union. The worker, Robert A. Wondzell, asserts that the union shop agreement violates his rights under state human rights laws and the state and federal constitutions.

The trial court held that Wondzell should pay union dues, but that he need not belong to the union. This satisfied neither side, and cross-appeals have been taken.

Before reaching the merits, we must dispose of jurisdiction and preemption issues. When these appeals were taken a question existed as to whether the National Labor Relations Act precluded state jurisdiction over this case. Our recent opinion in *Bald v. RCA Alascom,* 569 P.2d 1328 (Alaska 1977), is dispositive. We there held that the courts of Alaska do have jurisdiction over this type of case. There is no reason to discuss the question further in this opinion.

Robert A. Wondzell was employed as a boiler fireman at the Alaska Wood Products mill in Wrangell. His employment was covered by a union security agreement between Alaska Wood Products (hereinafter AWP or, more commonly, "the employer") and Lumber Production and Industrial Workers Local 2362, an affiliate of the United Brotherhood of Carpenters and Joiners of America (hereinafter "the union"). All persons employed at AWP, except some in job classifications not here at issue, must join the union and pay dues, or be discharged.

Wondzell has been a member of the Seventh-Day Adventist Church for a number of years. In 1974, he became convinced, in accordance with the tenets of that religion, that he could not conscientiously belong to or financially support a labor union. Hence he resigned from the union and ceased payment of dues. To avoid any personal financial gain, he made a payment equivalent to his union dues ($6.75 per month) to a nonreligious charity. Pursuant to the union security agreement, the union directed AWP to dismiss Wondzell from employment.

All parties have stipulated to the nature of Seventh-Day Adventist beliefs on compulsory unionism, and to Wondzell's good-faith adherence to those beliefs. Wondzell and others of his faith believe that it is contrary to God's will for them to associate with labor organizations. They cite passages in the Bible which instruct workers to obey their employers, and hence believe that unions stir up labor-management strife which would not exist if workers followed these biblical precepts rather than organiz-

ing. They believe that economic coercion, such as strikes and boycotts, is not a proper means to further even the most legitimate and desirable ends. Furthermore, they are concerned that a labor union demands of them loyalty to earthly goals which is contrary to their first loyalty to God.

Paying money to the union without joining it is not an acceptable compromise for Wondzell. Giving financial support to a union, as well as having one's name on its membership rolls, is unacceptable to Adventists.

When the union directed AWP to discharge Wondzell, he filed an action for declaratory, injunctive, and monetary relief. Both the union and the employer were named as defendants. Wondzell sought and was granted a temporary restraining order preventing his dismissal. After a hearing, the superior court denied a preliminary injunction. A petition for review was denied by this court. AWP then dismissed Wondzell from employment.

At the same time, the two defendants moved to dismiss the case, arguing that exclusive subject-matter jurisdiction was in the National Labor Relations Board, and that the National Labor Relations Act preempted the state human rights laws. These motions were denied. The union's petition for review on this issue was also denied by this court. Before trial on the merits, the Alaska State Commission on Human Rights was granted permission to intervene as a plaintiff.

At trial, the evidence showed that Wondzell had proposed to make monthly payments to the Multiple Sclerosis Society in lieu of union dues, and to forego all union benefits. The employer was willing to accept this compromise. The union, however, refused to accept it. The union's regional headquarters in Portland, Oregon, instructed the local to strike unless AWP discharged Wondzell. The union was willing to permit Wondzell to resign his membership, so long as he continued to pay the union a sum equivalent to the dues.[1] Because of the strike threat, the employer felt that he had no alternative but to discharge Wondzell. An official of the Seventh-Day Adventist Church made efforts to mediate the dispute. He found that the employer was receptive, but the union was not.

The superior court rendered an opinion holding that (1) the superior court had jurisdiction; (2) Wondzell's constitutional rights had not been violated; (3) AS 18.80.-220 imposed upon the union and the employer the duty to make a reasonable accommodation to Wondzell's beliefs; and (4) the accommodation offered by the union—dues payment but not membership—was a reasonable accommodation; anything more favorable to Wondzell would impose undue hardship upon the union and, therefore, was not required by law.

Wondzell appeals from the second and fourth of these holdings. The employer and the union appeal from the first and third of these holdings.

AS 18.80.220(a)(1) and (2) forbid discrimination on the basis of religion by either employers or labor unions.[2] We have not

1. The union was willing to assign Wondzell's dues entirely to its contingency fund, used for parties, picnics, and gifts to sick members, so that he would be contributing nothing to bargaining, strikes, or the international union organization. Wondzell testified that his beliefs would forbid even this, because it would "support them [the union] or enhance their image." A church official indicated that such a plan would be contrary to church teachings.

2. This statute provides in part:
  "Sec. 18.80.220. *Unlawful employment practices.*
  (a) It is unlawful for

(1) an employer to refuse employment to a person, or to bar him from employment, or to discriminate against him in compensation or in a term, condition, or privilege of employment because of his race, religion, color or national origin, or because of his age, physical handicap, sex, marital status, changes in marital status, pregnancy or parenthood when the reasonable demands of the position do not require distinction on the basis of age, physical handicap, sex, marital status, changes in marital status, pregnancy or parenthood;
(2) a labor organization, because of a person's sex, marital status, changes in marital status, pregnancy, parenthood, age, race, reli-

previously addressed the question of religious discrimination under AS 18.80.220(a). All parties discuss the case law under the corresponding federal statute, Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.* We have previously noted the similarity between AS 18.80.200 *et seq.* and Title VII of the 1964 federal act. *Loomis Electronic Protection, Inc. v. Schaefer,* 549 P.2d 1341, 1342 (Alaska 1976).[3] Therefore, we must review the decisional law under the federal statute.

The key words in considering religious discrimination under the federal statute are "reasonably accommodate . . . without undue hardship." 42 U.S.C. § 2000e(j). The federal law, in 42 U.S.C. § 2000e–2, makes it unlawful for an employer or a labor union to discriminate against a person because of that person's religion. Section 2000e(j) provides:

> "(j) the term 'religion' includes all aspects of religious observance and practice, as well as belief, *unless an employer demonstrates that he is unable to reasonably accommodate* to an employee's or prospective employee's religious observance or practice *without undue hardship* on the conduct of the employer's business." (emphasis added)

Federal case law reads this section as though it said "employer or labor organization" instead of "employer." *Cooper v. General Dynamics, Convair Aerospace Div.,* 533 F.2d 163, 171–73, 175 (5th Cir. 1976) (per concurring opinions), *cert. denied sub nom. Internat'l Assoc. of Machinists and Aerospace Workers, AFL–CIO, et al. v. Hopkins,* 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1091 (1977); *Hardison v. Trans World Airlines, Inc.,* 527 F.2d 33, 42 (8th Cir. 1975), *rev'd* (without mention of this issue) 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977); *Yott v. North American Rockwell Corporation,* 501 F.2d 398, 402–03 (9th Cir. 1974).

Section 2000e(j) was enacted in 1972. The original 1964 Civil Rights Act imposed merely a duty not to discriminate; it said nothing about a duty reasonably to accommodate. The federal Equal Employment Opportunity Commission in 1967 imposed the duty to accommodate in its guidelines interpreting the 1964 act. 29 C.F.R. § 1605.1. The federal circuits divided on whether this guideline exceeded the Commission's authority under the 1964 Act. *Compare, e. g., Riley v. Bendix Corporation,* 464 F.2d 1113 (5th Cir. 1972), and *Yott v. North American Rockwell Corporation, supra* (upholding the guideline), *with Reid v. Memphis Publishing Company,* 521 F.2d 512 (6th Cir. 1975), *cert. denied* 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976), and *Dewey v. Reynolds Metals Company,* 429 F.2d 324 (6th Cir. 1970), *aff'd* (by an equally divided court), 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971) (questioning the authority of the E.E.O.C. to adopt the guideline). The Supreme Court later resolved this question by holding that in light of the explicit Congressional adoption of the guideline in 1972, it was "a defensible construction of the pre-1972 statute" and would be applied to cases arising before the 1972 amendment. *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 76, 97 S.Ct. 2264, 2272, 53 L.Ed.2d 113, 126, n. 11 (1977). However, it held that the employer was not required to violate a collective bargaining agreement, otherwise valid, in order to accommodate the employee's particular religious needs. *Id.,* 432 U.S. at 79, 97 S.Ct. at 2274, 53 L.Ed.2d at 128.

This federal legal development is relevant to the case at bar. AS 18.80.200 *et seq.* was enacted in 1965, modeled on the original 1964 federal act. The Alaska statute has never been amended in line with the 1972 federal amendments; AS 18.80.200 *et seq.*

gion, color or national origin, to exclude or to expel him from its membership, or to discriminate in any way against one of its members or an employer or an employee; . . ."

**3.** In *Hotel, Motel, Restaurant, Etc. U. Loc. 879 v. Thomas,* 551 P.2d 942 (Alaska 1976), we

relied upon differences in the procedures specified in the two statutes. There we held that the Alaska law was more favorable to complainants than the federal, in that the Alaska commission had power to file class action administrative complaints even though the analogous federal agency did not.

contains no section similar to 42 U.S.C. § 2000e(j). The union argues that AS 18.80.200 et seq. does not, therefore, impose a duty of reasonable accommodation. It supports this argument by citing cases from the Sixth Circuit and the Illinois Court of Appeals. It is true that the Illinois court reached that conclusion in construing the Illinois statute which, like AS 18.80.200 et seq., paralleled the 1964 but not the 1972 federal enactment. Olin Corp. v. Fair Employment Practices Com'n of Illinois, 34 Ill. App.3d 868, 341 N.E.2d 459 (1976), aff'd 67 Ill.2d 466, 10 Ill.Dec. 501, 367 N.E.2d 1267 (1977) (solely on ground that employer had proved undue hardship.)

The Sixth Circuit cases defy analysis. Reid v. Memphis Publishing Company, 521 F.2d 512 (6th Cir. 1975), and Dewey v. Reynolds Metals Company, 429 F.2d 324 (6th Cir. 1970), aff'd (by an equally divided court), 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971), do hold that there was no duty to accommodate prior to enactment of 42 U.S.C. § 2000e(j). But to the contrary are Reid v. Memphis Publishing Company, 468 F.2d 346 (6th Cir. 1972) (a prior appeal of the same Reid case); and Draper v. United States Pipe & Foundry Co., 527 F.2d 515 (6th Cir. 1975). Judge Edwards wrote an opinion dissenting from the court's refusal to rehear Reid II en banc and thereby resolve the conflict, but his colleagues did not join him. Reid v. Memphis Publishing Company, 525 F.2d 986 (6th Cir. 1975) (Edwards, J., dissenting).

■ We are persuaded that a duty of reasonable accommodation should be read into the Alaska statute. As the Supreme Court noted in Trans World Airlines, Inc. v. Hardison, supra, such a duty can be found as a defensible construction of the analogous federal statute.[4] We will now take up the question of whether the duty to accommodate was met in the case before us.

Many Sabbatarian cases arising under Title VII of the federal act concern an employer who either cannot or will not adjust work schedules so that the employee can avoid work on Saturday. Reasonable accommodation in such cases is a matter of adjusting employee schedules, trading days off, and the like.[5]

The case at bar, however, is more difficult. Even the limited flexibility of changing work schedules is not available when Sabbatarians challenge compulsory unionism. Only three alternative dispositions are presented: (1) the worker must join the union, as must the other workers; (2) the worker need not join the union, but he must pay the union an amount equal to the union dues; (3) the worker need make no payments to the union, or have any affiliation with it, financial or otherwise. The union and the employer urge that we should adopt the second alternative, as did the trial court. Wondzell insists that because both the first and second alternatives are contrary to his religious beliefs, only the third alternative would amount to a reasonable accommodation.

We have reviewed the case law on the precise issue of what is a reasonable accommodation under these circumstances. In Yott v. North Am. Rockwell Corp., 428 F.Supp. 763 (C.D.Cal.1977) (on remand from Yott, supra ), the worker offered three proposals, all of which the court found would be unreasonable: transfer to another job with the same employer not covered by the union contract, exemption of the Sabbatarian from the union security clause, or retention on the job at a lower salary, presumably with the employer paying the union a sum equivalent to the worker's dues. The first of these three alternatives presumably is not available to Wondzell; the union contract covers all of AWP's employees except clerical workers, guards and supervisory personnel. The District Court in Yott

---

4. We agree with appellant that "reasonable accommodation" and "undue hardship" can be derived from the "business necessity" test of Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), for these verbal formulations are really exemplary of the statute's general purpose of preventing unreasonable discrimination in employment.

5. See generally 22 A.L.R.Fed. 580 (1975 & Supp.1977).

held that the second of the other possible accommodations would require the union to forego implementation of its statutory right to provide for a "union shop", and that the third would violate the union's duty of fair representation imposed by the National Labor Relations Act.[6]

*McDaniel v. Essex Int'l, Inc.,* 14 FEP Cases 807 (W.D.Mich.1976), held that in this situation any accommodation is unreasonable because it would work a hardship on the union. The court concluded that the constitutional problems presented and the strong policy favoring the union shop in federal labor law required a holding in favor of the union.

The decision was reversed in *McDaniel v. Essex International, Inc.,* 571 F.2d 338 (6th Cir. 1978), because there was no factual basis in the record for the trial court's conclusions about the undue hardship which would be inflicted upon the union if it accepted the employee's proposal. The case was remanded so that the trial court could receive evidence on the question. The *McDaniel* case is distinguishable from the case at bar, however, because we have before us an adequate evidentiary record to support the court's findings on undue hardship.[7]

*Anderson v. General Dynamics Convair, Etc.,* 430 F.Supp. 418 (S.D.Cal.1977), relied principally on *Yott, supra,* in holding that any accommodation which did not require payment to the union of a sum equivalent to the dues was unreasonable.

The United States Supreme Court in *Trans World Airlines, supra,* a work schedule case, took a very broad view of "undue hardship" and a correspondingly narrow view of "reasonable accommodation." It held that anything more than a *de minimis* cost to the employer and any interference with a collectively-bargained seniority system were undue hardships. The employer was not required, therefore, to yield to Hardison's demands that the seniority system be altered in his favor.

In the case at bar, the union is concerned principally with the "free rider" problem. The union or agency shop[8] is the quid pro quo which the union exacts from the workers in exchange for the bargaining strength which collective organization provides. There is strength in numbers. That is one of the principles underlying collective bargaining and the National Labor Relations Act.[9] Collective bargaining in an open shop

---

6. We recognize that this was merely an alternative holding. The court also held that 42 U.S.C. § 2000e(j), the "reasonable accommodation/undue hardship" statute, was unconstitutional because it conflicted with the establishment clause of the first amendment. It then discussed the reasonable accommodation issue, in order to avoid the necessity of a remand should the constitutional decision be reversed on appeal.

The basis for the constitutional argument is that a worker with religious scruples against unionism is entitled to accommodation under the statute, but a worker whose political beliefs lead him to equally strong objection to unionism has no such right. The first worker is given an advantage over the second, because of his religion. This constitutional question, not raised in the instant case, was raised but not decided in the United States Supreme Court's recent opinion in *Trans World Airlines, Inc. v. Hardison, supra.*

7. Similarly distinguishable from the case at bar is *Maine Human Rights Commission v. Local 1361, United Paperworkers International Union AFL–CIO et al.,* 383 A.2d 369 (Maine 1978). The court reversed a trial court finding of un-

due hardship which was rendered without any supporting testimony or other evidence. The appellate court, in reversing, noted that a finding of undue hardship might be warranted following an evidentiary hearing.

8. The parties recognize that the difference between the union shop—compulsory union membership—and the agency shop—compulsory payment of dues to the union, with or without membership—is irrelevant to this case. Wondzell's objection is to contributing money to the union, whether or not his name is on the rolls. The union is offering Wondzell the equivalent of the "agency shop."

9. The interest in the union shop is not merely the interest of the union. The National Labor Relations Act expresses a strong public and governmental policy in favor of collective bargaining as a means to industrial peace, and the union shop as a tool to increase the effectiveness and fairness of collective bargaining. *See* 29 U.S.C.A. §§ 151, 158(a) (1973); *Linscott v. Millers Falls Company,* 440 F.2d 14, 17–18 (1st Cir. 1971), *cert. denied,* 404 U.S. 872, 92 S.Ct. 77, 30 L.Ed.2d 116 (1971).

would permit free riders: negotiated wages and benefits would go equally to the employees who financially supported the bargaining agent and to those who did not.[10]

Wondzell argues that he would not be a free rider under his proposed accommodation. He would make a monthly payment to a non-religious, non-labor charity, the Multiple Sclerosis Society. He was willing to let the union select the recipient of his charitable gifts. He would accept cost of living increases but not other union-negotiated pay increases. He intended to continue to take advantage of employer-paid fringe benefits, including medical insurance, pension, vacation, and holidays, even if they were union-negotiated.[11] He acknowledged that the union had helped him arrange a work schedule which assured that he would not be required to work on the Sabbath.

■ The union presents an opposing argument. While the $6.75 per month in union dues would not enrich Wondzell under his proposal, it would not benefit the union. Making Wondzell's proposed accommodation would decrease the union's revenues to service a bargaining unit unchanged in size. The union is also afraid that other workers motivated by nonreligious conscientious objections to unionism [12] or by lucre rather than conscience might seek to be exempted from dues payments.

■ The question before us is painful to resolve. As we noted earlier, only three alternatives were presented. The one selected by the trial court was the only real "accommodation" in the sense that it represented a compromise. The other two alternatives did not. The trial court stated its conclusion in these terms:

"Defendant union has offered . . . accommodation in allowing plaintiff not to become a member of the union, so long as he pays to the union an amount equivalent to the union dues. In my view anything less than this would cause an undue hardship on the union, for unless each employee pays his fair share of the cost of collective bargaining under the union shop agreement, the capacity of the union to carry out its bargaining functions is necessarily diminished. Plaintiff should have no right to avoid meeting that share, since it is clear he reaps the full benefits of the bargaining results. It is therefore my conclusion that plaintiff's rights must yield to those assured under the guarantee of the union shop." [13]

We are convinced that the trial court ruled correctly.[14] It is apparent that the

10. In exchange for governmental protection as exclusive bargaining agent, a union must fairly and equitably represent all the workers in the bargaining unit, union and non-union. *Steele v. Louisville & Nashville R. R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944).

11. Elder W. Melvin Adams, a national official of the Seventh-Day Adventist church, testified that this would be in accord with church teachings.

12. In order to avoid the danger of unconstitutionality we would interpret AS 18.80.220 to accord the same privileges to all sincere conscientious beliefs, whether or not they are accompanied by a belief in a supreme being. *See Yott v. North American Rockwell Corp.,* 428 F.Supp. 763 (C.D.Calif.1977); *United States v. Seeger,* 380 U.S. 163, 176, 85 S.Ct. 850, 859, 13 L.Ed.2d 733, 743 (1965):

"A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admitted-

ly qualifying for the exemption comes within the statutory definition."

13. Wondzell argues that to the extent the quoted passage contains findings of fact, they are unsupported by the evidence and are therefore clearly erroneous. (Alaska R.Civ.P. 52(a)). The evidence clearly supports the conclusion that if Wondzell prevailed, the union would have fewer dollars with which to service its bargaining unit. Wondzell's argument is that the sum which would be lost to the union is *de minimis.*

The Tenth Circuit has held that "reasonable accommodation" and "undue hardship" raise questions of fact, to be tested on appeal by the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). *United States v. City of Albuquerque,* 545 F.2d 110 (10th Cir. 1976); *Williams v. Southern U. Gas Co.,* 529 F.2d 483 (10th Cir. 1976), *cert. denied,* 429 U.S. 959, 97 S.Ct. 381, 50 L.Ed.2d 325 (1976).

14. We do not imply that additional union accommodation may not be feasible. We note

court selected the only practical alternative of those presented. Any accommodation beyond that would impose an undue hardship upon the employer or the union. Under the principles set forth in *Trans World Airlines, Inc. v. Hardison, supra,* the employer and the union cannot be asked to do more.

Because we find no error in the determination made by the trial court, we must affirm the judgment.[15]

AFFIRMED.

BOOCHEVER, Chief Justice, with whom RABINOWITZ, Justice, joins, dissenting in part.

While I agree with most of the opinion, I am not convinced that a sufficient effort was made to comply with the duty to accommodate. In *Yott v. North American Rockwell Corp.,* 428 F.Supp. 763 (C.D.Cal. 1977), under similar circumstances, the worker offered to receive a salary reduced by the amount of dues he would otherwise pay to the union. It would then be left to the union and the employer to determine whether additional payments equivalent to the union dues would be paid by the employer to the union. I agree with the statement in *McDaniel v. Essex International, Inc.,* 571 F.2d 338, 344 (6th Cir. 1978), that the legislation requires a balancing between the religious needs of the individual and the legitimate business needs of both the employer and the union. I also am mindful of the considerations eloquently expressed by Justice Marshall in his dissent in *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 96–97, 97 S.Ct. 2264, 2283, 53 L.Ed.2d 113, 139 (1977):

> What makes this case most tragic, however, is not that respondent Hardison has been needlessly deprived of his livelihood simply because he chose to follow the dictates of his conscience. Nor is the

tragedy of the case exhausted by the impact it will have on thousands of Americans like Hardison who could be forced to live on welfare as the price they must pay for worshipping their God. The ultimate tragedy is that despite Congress' best efforts, one of this Nation's pillars of strength—our hospitality to religious diversity—has been seriously eroded. (footnote omitted)

I am not convinced that suitable effort has been made to explore all alternatives in this case before reaching the drastic result of depriving Wondzell of his employment.

---

that the union did offer to have Wondzell's dues applied solely to its contingency fund used for parties, picnics and gifts to sick members so that he would not be contributing to bargaining, strikes or the international union organization. There is still the possibility of other accommodations.

**15.** In view of our disposition it is not necessary to review Wondzell's claim that the Alaska Constitution requires that a right to reasonable accommodation of one's religious beliefs must be recognized, for we have found such a right to be within the ambit of our statutory law.