No. 22683.

JOHN L. RAUCH, GENE E. FISCHER AND CHARLES T. COLLOPY *v.* CHARLES L. RHOADES, DOING BUSINESS AS RHOADES AGENCY AND NATIONAL REAL ESTATE & MANAGEMENT CO., A COLORADO CORPORATION.

(470 P.2d 854)

Decided June 22, 1970.

WARBERG, DRESSEL & MAST, SONJA E. WARBERG, for plaintiffs in error.

MARCH, MARCH & SULLIVAN, JOHN-DAVID SULLIVAN, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE GROVES.

THE parties appear here in reverse order of their appearance in the trial court. Defendants in error, plaintiffs at the trial level, as real estate brokers, brought suit to recover a real estate commission claimed to be owing upon the sale of certain lands formerly owned by the defendants. The plaintiffs in error — the defendants —

contended that the sale of property had been made through their own efforts and not through those of the plaintiffs. On trial to the court, the plaintiffs were awarded the sum of $9,000 as commission, and defendants brought this writ of error. We affirm.

Arlan's Department Stores, Inc., hereafter referred to as Arlan's, is a New York based corporation which owns and operates a chain of department stores. The corporation became interested in the possibility of locating one of its stores in the area of Ft. Collins, Colorado. In pursuing this interest, Arlan asked the plaintiff National Real Estate & Management Company of Denver whether appropriate land might be found in Ft. Collins. The plaintiff company contacted plaintiff Rhoades of Ft. Collins, who began to search for suitable locations.

The three defendants owned several acres of undeveloped property. Rhoades deemed this land suitable and contacted the defendants to inform them of the fact that he was in contact with a potential purchaser for their property. As a result, the defendants appointed Rhoades their real estate agent upon a non-exclusive basis, and agreed to pay him a 6% commission if a sale was consummated.

A short time thereafter, two executives of Arlan's were in Ft. Collins and were shown defendants' land, as well as other tracts, by plaintiff's representatives. The executives were interested in the defendants' land and requested that they be given an option before proceeding further. On January 22, 1965, for a consideration of $1,000 Arlan's obtained an option until March 15, 1965, to purchase the land for $150,000. To exercise the option Arlan's were to send a written notice by registered mail accompanied by a check for $14,000. Credit for the initial payment of $1,000 was to be given upon the purchase price in the event that the option were exercised.

Following the signing of this option, the parties to the option began a period of negotiations involving many long distance telephone calls and several trips by

defendants to Arlan's main office in New York for negotiations. The record is in dispute concerning the contribution made during this period by the plaintiffs. The defendants contend that the plaintiffs effectively abandoned the contract and did nothing while the plaintiffs' representatives testified that they kept in constant contact and diligently applied themselves to the task of completing the sale and purchase. The trial court resolved the conflict in favor of the plaintiffs by making the following finding:

"The court finds from the latter part of August, 1964 and until the sale was finally consummated in May of 1965, the plaintiff, Rhoades, and the plaintiff, National Real Estate and Management Company, acting through its officers, Robert L. Eichberg and John M. Sande, held many conferences with the defendants as representatives of Arlan's department stores and had much correspondence and many telephone calls relating to the sale and purchase of the defendants' property to Arlans."

As the trial court's ruling is based upon conflicting evidence, it is therefore binding upon this court. *Credit Inv. & Loan Co. v. Guaranty Bank & Trust Co.*, 166 Colo. 471, 444 P.2d 633.

All parties concede that the option was not exercised precisely according to its original terms. The March 15 deadline passed without any conclusion of the negotiations. However, on March 16 one of the defendants, an attorney, sent the following telegram to Arlans:

"Confirming telephone conversation of today and based on your statement that you would be ordering check to exercise option your option extended for time necessary for check to be issued and reach us. Please expedite."

The defendants assert that thereafter the prospective sellers and purchasers set a new deadline of April 7. However, negotiations continued past this date and were not finally completed until April 23, 1965, when Arlans sent a check for $14,000 to the defendants.

The contracting parties concluded a sale and purchase

agreement for a total purchase price of $150,000. The agreement contained several provisions not found in the option: the defendants were to pave an access road; no sales of land were to be made by defendants to any other discount stores for a period of three years; permission for a total of four curb cuts was to be obtained from the highway department; payment of the balance of the purchase price was to be made by remittance of $50,000 immediately and of the balance within a period of 60 days, with interest on payments made after 30 days. There was compliance with all conditions and the sale was consummated.

The plaintiffs obviously would be entitled to a commission if the option were exercised. The findings of the trial court imply that the option was exercised. The court found a waiver of the time limit stated in the option, and also found that the parties thereto were not limited to its terms and conditions. This indicates the court's conclusion that the option was extended, modified and exercised.

Plaintiffs in error contend that, despite the findings of the trial court, the final agreement was entirely separate and distinct from the option. The final agreement was certainly more detailed than the option. However, there are marked similarities between the two documents: The total purchase price was the same; and, more importantly, the payment of $14,000 at the time of execution of the sales agreement was the same. Just as specified in the option, credit was given for the $1,000 paid for the option. Although time was made "of the essence" by the language of the option, the defendants could waive protection of this clause; and by implication, the court found that they did so waive. The fact that contracting parties changed some of the terms of the option does not prevent recovery by the brokers. *McCullough v. Thompson,* 133 Colo. 352, 295 P.2d 221.

Our affirmance, however, need not depend upon the proposition that the option was exercised. The underlying

question in this case is whether the plaintiffs were the "procuring cause" of this sale. *Hayutin v. De Andrea,* 139 Colo. 40, 337 P.2d 383. The trial court found that they were. The plaintiffs were responsible for the initial contact between buyer and sellers, and they were active in the negotiation of the option agreement. This much the defendants concede. Their argument, of course, is that the option expired unexercised and that the eventual sale resulted solely from their own efforts. For this reason, the defendants contend, *Scott v. Huntzinger,* 148 Colo. 225, 365 P.2d 692, is dispositive of this claim for a commission.

In *Scott, supra,* the property owners entered into a listing contract with the broker providing that, if the broker would secure one White *as an optionee* to purchase a lease *upon specified terms* and if White exercised that option, then the owners would pay the broker a commission. The option came into being, but was never exercised. Later the owners entered into an arrangement with White whereby he purchased the same lease. The opinion in the case points out that the only agreement to pay a commission was conditioned upon the exercise of a particular option and, since that option was not exercised, the broker was not entitled to a commission. It readily can be seen that *Scott* is distinguishable.

In the instant matter the trial court found "that Arlans and the defendants were brought together and the sale of the property effected by the services rendered by the plaintiffs, and by virtue of well-established rules of law the plaintiffs are entitled to their brokers' commission." In other words, the court found that the plaintiffs were the procuring cause of the sale. The listing here was to procure a purchaser, not necessarily to negotiate an option which would be exercised. Assuming that this option was not exercised, the court found that the sale eventually made was one resulting from the efforts of the plaintiffs and, while the testimony is in some conflict, there is ample evidence to support the court's finding

in effect of "procuring cause." In the well documented opinion in *Brewer v. Williams,* 147 Colo. 146, 362 P.2d 1033, it was held "that a broker who procures a purchaser, ready, willing and able to purchase upon the terms and conditions imposed by the owner is entitled to his commission, even though the owner and the purchaser thereafter conduct further negotiations resulting in a change of terms . . ." The listing here did not specify particular terms and conditions and there is ample evidence to support the conclusion that the defendants agreed to pay a commission if the plaintiff Rhoades produced a lessee or purchaser who entered into a lease or purchase satisfactory to defendants. The plaintiffs produced the purchaser and, from the fact that the sale was consummated, the terms and conditions must have been satisfactory to the defendants. In the light of the court's findings, the fact that the option was not exercised strictly in accordance with its terms did not constitute a severance of the contractual thongs by which the parties to this action were bound together in the commercial arena. See *George v. Dower,* 125 Colo. 45, 240 P.2d 897.

Judgment affirmed.

MR. JUSTICE DAY, MR. JUSTICE HODGES and MR. JUSTICE LEE concur.