414 F.Supp. 495 (1976)
Virginia CEDECK, Plaintiff,
v.
HAMILTONIAN FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.
No. 75-1005C(4).
United States District Court, E. D. Missouri, E. D.
June 4, 1976.
*496 Gilden & Dodson, St. Louis, Mo., for plaintiff.
Robert W. Henry, Clayton, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Virginia Cedeck brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 28 U.S.C. § 1343.
This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

FINDINGS OF FACT
1. Plaintiff Virginia Cedeck is a female resident of the State of Missouri and was during all times relevant herein a citizen of the United States.
2. Defendant Hamiltonian Federal Savings and Loan Association is an association organized and existing pursuant to the laws of the United States, and at all times relevant herein, was an employer within the meaning of 42 U.S.C. § 2000e(b).
3. On September 8, 1969, plaintiff began her employment with defendant, working as a teller at the Bissell Hills branch office. Plaintiff worked at this branch office until she was discharged on November 8, 1972.
4. Plaintiff was a high school graduate and had two years of accounting at the Missouri Institute of Accounting and Law.
5. From the start of plaintiff's employment until the middle of 1971, Jack Murphy was the manager of the Bissell Hills branch office. At times from 1969 through 1971, plaintiff was left in charge when Mr. Murphy was on vacation or was ill. There is no evidence, however, that plaintiff, during these periods, attended the meetings customarily attended by branch managers, or had authority to hire or fire personnel.
6. In 1971, Mr. Murphy left the Bissell Hills branch office and went to defendant's Ladue office. Plaintiff indicated her desire to take over the job of branch manager to Mr. Murphy but did not indicate this interest to Mr. Jay Lartonoix, Secretary-Treasurer of defendant Bank who was in charge of filling the opening. Plaintiff was aware that Mr. Lartonoix was in charge of the hiring. There is no admissible evidence from which to conclude that Mr. Lartonoix was aware of plaintiff's interest in the job.
7. The evidence establishes that plaintiff was not qualified for the position as branch manager as she was having difficulties with the bank's computer system, her fellow employees and took a fair number of absences.
8. Mr. Lartonoix, in mid-July of 1971, reviewed the existing employees to see if *497 any were qualified for the opening. He decided that none were sufficiently capable. Accordingly, he placed an advertisement in the St. Louis Post-Dispatch which read as follows:
ASSISTANT BRANCH MANAGER
For large savings [sic] and Loan Association. Train for Branch Manager in North County area. College preferred but will accept night school student. Some knowledge of Accounting. Excellent fringe benefits and solid future. Box F-37 P.-D.
This advertisement was placed by telephone by Mr. Lartonoix. While Mr. Lartonoix did not specify where the advertisement was to be placed in the newspaper, it appeared in a column entitled "HELP WANTED-MEN, BOYS". There is no evidence to show that the placement of the advertisement in this column was the result of anything other than the decision of St. Louis Post-Dispatch personnel.
9. Mr. Lartonoix received approximately 25 responses to the advertisement. He interviewed 5 of the applicants, and ultimately hired Mr. Donald Sextro, who became branch manager of the Bissell Hills branch office on September 27, 1971. Mr. Sextro received his B.A. in economics from the University of Missouri at St. Louis and had had additional courses in accounting.
10. There were no further openings for the position of branch manager from 1971 through the date of plaintiff's discharge.
11. In May of 1971, defendant Bank began using a computer system to handle its transactions. The evidence established that plaintiff never mastered the system. In addition, plaintiff would repeatedly call certain bank personnel, especially on those days when the branch manager was off, with questions which were not only repetitive of questions previously asked, but were also questions the answers to which were contained in a manual at plaintiff's branch office.
12. The evidence also established that plaintiff was frequently absent. Although plaintiff's absences were apparently within the number of absences allowed her each year, both Mr. Sextro and Mr. Lartonoix were disturbed by the numbers.
13. Credible evidence further established that plaintiff had difficulty working with her fellow employees. Although bank customers were pleased with plaintiff's work, her fellow employees were offended by her attitude toward them.
14. Throughout this period, plaintiff received merit increases at the times when defendant reviews its employees for such purposes. Nonetheless, the evidence concerning attitude, knowledge of the computer system, and absences leads the Court to find that plaintiff was not qualified for a promotion and that defendant had ample justification for plaintiff's discharge.
15. On November 8, 1972, plaintiff was discharged. The decision was made by Mr. Lartonoix although communicated to plaintiff by Mr. Sextro. The reasons for the discharge were plaintiff's absences and attitude. Included in the attitude problem was plaintiff's apparent inability to learn the computer system. Plaintiff's sex was not a factor in the decision to discharge her.
16. In November, 1972 defendant had 55 employees. There were no women at that time in any managerial positions.
17. Plaintiff filed charges with the Equal Employment Opportunity Commission, alleging sex discrimination, on November 13, 1972. A Right to Sue letter was issued on August 8, 1975. Suit was filed with this Court within 90 days, on November 3, 1975.

CONCLUSIONS OF LAW
Plaintiff alleges that jurisdiction exists pursuant to 42 U.S.C. § 2000e et seq. Although plaintiff pleaded 28 U.S.C. § 1343 as a jurisdictional basis, plaintiff's attorney represented to the Court that such was unavailing as a jurisdictional basis since allegations of race or state action were not present.
The Court is of the opinion that jurisdiction to determine whether the failure to promote plaintiff to the position of *498 branch manager does not exist. The position which plaintiff claims to have sought was filled on September 27, 1971. Plaintiff filed a charge with the Equal Employment Opportunity Commission on November 13, 1972. This clearly more than 180 days after the alleged discriminatory action. 42 U.S.C. § 2000e-5.
Previously, this Court had denied defendant's motions to dismiss in which defendant had asserted plaintiff's failure to file timely charges with the Equal Employment Opportunity Commission. The reason for the Court's ruling was an allegation by plaintiff in her pleading that defendant had not only failed to promote her in September, 1971 but also had failed to consider her for promotion. The evidence establishes, however, that there were no further openings for branch manager following the hiring of Mr. Sextro until after plaintiff's discharge. In Culpepper v. Reynolds Metals Company, 296 F.Supp. 1232 (N.D.Ga.1969), rev'd on other grounds, 421 F.2d 888 (5th Cir. 1970), the Court concluded that failure to promote was a completed act when the job opening was filled and that such was the date to look to to determine if charges were timely filed. See also Gates v. Georgia-Pacific Corporation, 492 F.2d 292 (9th Cir. 1974). In Rich v. Martin Marietta Corporation, 522 F.2d 333 (10th Cir. 1975), the court held that where "[p]laintiffs . . . challenge the entire promotion system maintaining that it continually operated so as to hold them in lower echelons", the statutory time period in which to file charges is inconsequential. Plaintiff herein, however, has not attacked a promotional system but is merely contesting the propriety of a particular promotion. Furthermore, there were no further promotions for which plaintiff could have been considered. Under these circumstances, the Court concludes that charges were not filed within the required period with the Equal Employment Opportunity Commission and accordingly, the Court lacks jurisdiction. See McDonnell Douglas Corporation v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
Assuming arguendo that jurisdiction exists over defendant's failure to promote plaintiff, the Court concludes that the failure to promote was not the result, in whole or in part, of discrimination on the basis of sex. To establish a prima facie case, plaintiff must show that she applied for and was qualified for the position available; that the employer rejected plaintiff despite her qualifications; and that "the employer continued to seek applicants from persons of complainant's qualifications". McDonnell Douglas Corporation v. Green, supra at 802, 93 S.Ct. 1817; Wright v. Stone Container Corporation, 524 F.2d 1058 (8th Cir. 1975); Holthaus v. Compton & Sons, Inc., 514 F.2d 651 (8th Cir. 1975).
The Court has found, however, that plaintiff was not qualified for the job and further found that plaintiff did not, in fact, apply for the position. Under these circumstances, plaintiff has failed to prove her prima facie case.
Plaintiff testified at trial to statements made to her by Mr. Murphy. Mr. Murphy, however, is deceased. Such statements are therefore hearsay and inadmissible as evidence herein. Rules 801-804, Federal Rules of Evidence.
Plaintiff presented statistical evidence showing that at the times in question, there were no women in managerial positions. The Court concludes that such statistical evidence is without any probative value. Defendant's employees number well under 100. As the court noted in Harper v. Trans World Airlines, Inc., 525 F.2d 409 (8th Cir. 1975), ". . . statistical evidence derived from an extremely small universe, as in the present case, has little predictive value and must be disregarded". Id. at 412.
Jurisdiction clearly exists as to plaintiff's claim that she was discharged because of her sex. 42 U.S.C. § 2000e-5(f)(3). The Court has found, however, that sex was not a factor in Mr. Lartonoix's decision to discharge plaintiff. Instead, the reasons for plaintiff's discharge were plaintiff's absenteeism and her attitude towards *499 her work and co-workers. While it may be that plaintiff's absenteeism did not warrant a discharge, and thus in that sense the discharge was wrongful, the Court concludes nonetheless that plaintiff's inability to handle the computer system and her difficulties with her co-workers were sufficient grounds for discharge, and not merely pretextual. Under these circumstances, Title VII has not been violated as termination was not the result of sex discrimination. Christian v. General Motors Corporation, 341 F.Supp. 1207 (E.D.Mo.1972), aff'd, 475 F.2d 1407 (8th Cir. 1973).
Having failed to prove her claim of discrimination based upon sex, the Court will give judgment to the defendant at plaintiff's costs.