**ALASKA STATE COMMISSION FOR HUMAN RIGHTS,**
Appellant/Cross-Appellee,

v.

**YELLOW CAB,**
Appellee/Cross-Appellant.

No. 4229/4277/4313.

Supreme Court of Alaska.

May 2, 1980.

Carolyn E. Jones, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellant.

James H. Cannon, Rice, Hoppner, Hedland, Fleischer & Ingraham, Fairbanks, for appellee.

Before RABINOWITZ, Chief Justice, CONNOR, BOOCHEVER, BURKE and MATTHEWS, Justices.

## OPINION

BOOCHEVER, Justice.

In this case, we must consider the requirements for a prima facie case of sex discrimination in an action brought against a private company. We hold that the correct test was utilized by the Alaska State Commission for Human Rights (hereinafter "Commission"), and find that there is substantial evidence to support the Commission's finding that Wendy Mayer, the real party in interest, established each element of a prima facie case. Consequently, we reinstate the Commission's decision, which was reversed by the superior court, that appellee, Yellow Cab, discriminated against Mayer in her privilege of employment because of her sex in violation of AS 18.80.-220(a)(1).[1]

On December 10, 1975, Wendy Mayer filed a complaint with the Commission alleging that Yellow Cab discriminated against her because of her sex in violation of AS 18.80.220(a)(1). The Commission held a hearing and found that Yellow Cab had violated AS 18.80.220(a)(1) by its refusal to hire women as cab drivers.

At the hearing, Mayer testified as follows. On December 2, 1975, she went to the office of Yellow Cab in Fairbanks to apply for a job as a cab driver. She asked for a job application as a cab driver. A gentleman whom she believed to be Alan Marshall, Yellow Cab's dispatcher,[2] told her that "they didn't hire women cab drivers." She asked for an application anyway, but he stated that they were locked up and he could not give her one because they did not hire women cab drivers. He also told her that if she wanted to come back at 5:00 a.m. the following day, she could talk to the owner, Mr. Moore, but it would not do any good. She stated that it was common knowledge among cab drivers that Yellow Cab did not hire women.[3] She made no further attempts to obtain an application.

Cathi Carr-Lundfelt, an investigator for the Human Rights Commission, also testified at the hearing regarding her investigation of Mayer's complaint. She spoke with Marshall, Yellow Cab's dispatcher, who stated that he did not remember Mayer, but that several women had asked for an application. He told these women that the firm

---

1. AS 18.80.220(a) provides in part:

 It is unlawful for

 (1) an employer to refuse employment to a person, or to bar him from employment, or to discriminate against him in compensation or in a term, condition, or privilege of employment because of . . . sex . . . when the reasonable demands of the position do not require distinction on the basis of . . sex . . . .

2. Mayer testified that generally the dispatchers know whether a job as a cab driver is available.

3. Mayer had worked for two other cab companies in Fairbanks.

did not hire women. He also stated that when the women met with Moore, the owner, he would tell them that there were no vacancies although "this was just an excuse." According to Carr-Lundfelt's examination of Yellow Cab's records, Yellow Cab hired three men during the week of December 6 and two during the week of December 12.

Additionally, two women drivers for Checker Cab of Fairbanks testified that it was common knowledge that Yellow Cab did not hire females.

Alan Marshall, a part-time driver and dispatcher for Yellow Cab, testified that whenever anyone came to get a job, he would tell the person to talk to Moore and where he could be found. To his knowledge, during the ten-year period that he has been employed by Yellow Cab, no woman has been hired. He denied telling Carr-Lundfelt that Moore told women who applied that there were no vacancies. It was stipulated that Marshall does not hire, fire, screen or have anything to do with personnel matters. Nevertheless, Yellow Cab's rules and regulations provide that "[d]ispatchers have full authority while on shift to carry out company policy."

Moore, Yellow Cab's managing stockholder, testified on his own behalf. He does all the hiring and firing of personnel and never hires anyone without a personal interview. Although he has no application forms, he considers applicants' past work records and driving experience. He has never hired a female, although he has interviewed several. He stated that the ones he interviewed had no experience and did not know what they were doing. He had, however, hired men who had no previous experience. He did state that if females came along and were capable, he would hire them. He was aware of an impression that Yellow Cab did not hire women.

Mary Knight, another dispatcher for Yellow Cab, stated that whenever anyone asked for a job, she told the person they must speak to Moore. She had never heard Moore state that he would not hire a female.

■ In July, 1977, the Commission filed its findings of fact and conclusions of law. The Commission found Yellow Cab in violation of AS 18.80.220(a)(1) because it refused to hire women, including Mayer, as drivers. On July 29, 1977, Yellow Cab filed a notice of appeal to the superior court. In reversing the Commission's decision, the superior court held that Mayer had failed to prove a prima facie case of discrimination because she had not "applied" for the job. The court's holding obviated any need to discuss Yellow Cab's other points on appeal which questioned the admissibility of certain statements[4] and the award of back pay to Mayer.

Yellow Cab moved for attorney's fees pursuant to Civil Rule 82, and for costs. When no opposition was filed, the superior court awarded full attorney's fees of $15,225.00 against the Commission and Mayer. After a motion for reconsideration was filed, the superior court awarded $7,500.00 in attorney's fees and $412.96 in costs for a total judgment in favor of Yellow Cab in the amount of $7,912.96.

The Commission filed a notice of appeal, contending that (1) the superior court erred in concluding Mayer failed to establish a prima facie case of sex discrimination, and (2) it erred in awarding attorney's fees against the Commission and Mayer. Yellow Cab filed a notice of cross-appeal, contending that the superior court erred in reducing its attorney's fees award.

## THE PRIMA FACIE CASE

■ We have never explicitly discussed what elements constitute a prima facie case

---

4. Yellow Cab contended that the Commission erred in admitting, over a hearsay objection, the testimony of two women cab drivers that a Yellow Cab driver told them, "Yellow will not hire women drivers." AS 18.80.120 provides that the Commission "is not bound by the strict rules of evidence prevailing in courts of law or equity." Even assuming it might have been error to admit this testimony, any error was harmless because the testimony was cumulative.

of sex discrimination in an action brought against a private company. In the past, when considering the parameters of our anti-discrimination statute, we have examined the relevant federal Title VII decisions for guidance.[5] In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973), the United States Supreme Court explicated the prima facie case for discrimination by a private company under Title VII. It held that the complainant has the burden to show:

> (i) that he belongs to a . . . [class protected by the statute]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualifications.

This is the standard used by the Commission and we adopt this standard for discrimination cases brought under AS 18.80.220.[6]

Yellow Cab concedes that Mayer is a member of a protected class. It disputes, however, that Mayer had "applied, Mayer was qualified, and there were openings."

### A. The Application

The Commission made a finding of fact that Mayer had "applied" for a job. The standard of review to be applied by the reviewing court is whether the agency's findings of fact are supported by substantial evidence.[7] Moreover, where the evidence is conflicting, the reviewing court will not reweigh the evidence and substitute its judgment for that of the trier of fact.[8] Thus, the evidence should be viewed in favor of the findings even though the reviewing court might have taken a contrary view of the facts.[9] Although the superior court did not mention which standard of review it applied, it implicitly held that there was no substantial evidence to support the Commission's finding. The Commission contends that the superior court erred in holding that there was not substantial evidence to support its finding that Mayer had applied. We agree.

 Viewing the evidence in favor of the findings by the Commission, the evidence shows that Mayer went to the office of Yellow Cab to apply for a job as a cab driver. She asked for a job application as a cab driver. The dispatcher, a person who Mayer reasonably believed would know what types of people would be hired, told her that Yellow Cab did not hire women cab drivers. Although the dispatcher denied making such a statement, the denial was directly contradicted by Investigator Carr-Lundfelt's testimony of the statement made by the dispatcher to her. Additionally, Mayer specifically asked for an application, but the dispatcher stated that they were locked up and he could not give her one

5. *See Wondzell v. Alaska Wood Products, Inc.*, 583 P.2d 860, 862–63 (Alaska 1978), *vacated on rehearing*, 601 P.2d 584 (Alaska 1979); *Brown v. Wood*, 575 P.2d 760, 770 (Alaska 1978), *modified*, 592 P.2d 1250 (1979); *Loomis Electronic Protection, Inc. v. Schaefer*, 549 P.2d 1341, 1342 (Alaska 1976).

6. Both parties agree that these elements constitute a prima facie case. In *Brown v. Wood*, 575 P.2d at 770 n. 13, we adopted "the principles enunciated in *McDonnell*."

7. *See Galt v. Stanton*, 591 P.2d 960, 963 (Alaska 1979); *Swindel v. Kelly*, 499 P.2d 291, 298 (Alaska 1972); *Keiner v. City of Anchorage*, 378 P.2d 406, 411 (Alaska 1963). Although there has been some confusion regarding which standard of review is to be applied to a particular agency decision, *Galt*, 591 P.2d at 965 (Rabinowitz, J., concurring), it is clear that here, where purely factual questions are involved, the substantial evidence test is appropriate. The question here is whether there is substantial evidence upon which the Commission could properly base its conclusion that Mayer had applied.

8. *See State Dept. of Labor v. Boucher*, 581 P.2d 660, 662 (Alaska 1978); *Preferred General Agency of Alaska, Inc. v. Raffetto*, 391 P.2d 951 (Alaska 1964).

9. *See In re Adoption of Baby Boy*, 106 Ariz. 195, 472 P.2d 64, 71 (1970); *Cavazos v. Holmes Tuttle Broadway Ford Inc.*, 104 Ariz. 540, 456 P.2d 910, 913 (1969); *Gerhard v. Stephens*, 68 Cal.2d 864, 69 Cal.Rptr. 612, 442 P.2d 692, 714 (1968); *Rauch v. Rhoades*, 172 Colo. 152, 470 P.2d 854, 855 (1970).

anyway because they did not hire women cab drivers. He advised her she could talk to the owner, but it would not do any good. Yellow Cab's rules and regulations state that the dispatcher has full authority to carry out company policy. Furthermore, it was common knowledge among cab drivers that Yellow Cab did not hire women and, in fact, Moore was aware of an impression that Yellow Cab did not hire women and has never hired a woman driver. Although Mayer did not file a formal application in the technical sense, we believe that she did "apply" within the meaning of the *McDonnell* requirement and that there is substantial evidence to support the Commission's finding that she did apply.[10]

Our conclusion is bolstered by sound authority which dictates:

> [W]here a person seeking employment is effectively deterred by the discriminatory policy or conduct of the employer, the complaining party is not required to formally apply for the position in order to seek and obtain relief because of the discrimination.

*Banks v. Heun-Norwood,* 566 F.2d 1073, 1076 (8th Cir. 1977).[11] Here, Mayer could reasonably believe that any further application would have been a futile gesture.

### B. *The Qualifications*

Yellow Cab next contends that there was no substantial evidence to support the Commission's finding that Mayer was "qualified." Although the superior court made no ruling on this point, the factual record is before us, and we hold that there is substantial evidence to support the Commission's finding.[12]

Before applying for work with Yellow Cab, Mayer had driven for two other cab companies in Fairbanks. Although she was terminated by both companies, the Commission noted that her termination from Independent Cab may have been in itself discriminatory, and her termination from Checker Cab was not because she was unqualified.[13] Although Yellow Cab has no written minimum qualifications,[14] Moore testified that he considers a number of factors when making a hiring decision: past driving experience; past work record; driving record; knowledge of the business; drinking habits; and relations with past employers. The record demonstrates that Moore did not apply these criteria uniformly to men and women. In fact, Moore has hired male drivers who possessed no prior cab driving experience. Under these circumstances, we hold that there is substantial evidence to support the Commission's findings that Mayer was qualified.

10. Marshall stated that Yellow Cab had no application forms. If that is the case, then it would be impossible for Mayer to have filed an application form. Moreover, if Yellow Cab used this type of informal hiring procedure, it lends itself to arbitrary and discriminatory hiring. *See Eldredge v. Carpenters 46 N.Cal., etc.,* 440 F.Supp. 506, 522 (N.D.Cal.1977); *Waters v. Furnco Constr. Corp.,* 551 F.2d 1085, 1089 (7th Cir. 1977), *rev'd on other grounds,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Reed v. Arlington Hotel Co.,* 476 F.2d 721, 724 (8th Cir.), *cert. denied,* 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973).

11. *See Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979, 988 (D.C. Cir. 1978); *Hailes v. United Air Lines,* 464 F.2d 1006 (5th Cir. 1972); *McDonald v. General Mills, Inc.,* 387 F.Supp. 24 (E.D.Cal.1974). *But cf. Peltier v. City of Fargo,* 396 F.Supp. 710 (D.N.D.1975), *rev'd on other grounds,* 533 F.2d 374 (8th Cir. 1976) (unsubstantiated rumors that employer discriminated does not excuse the formal application requirement).

12. In reviewing decisions of administrative agencies, the superior court sits as an appellate court. Our review of the superior court's decision is in essence the review of a decision made by an intermediate appellate court. In cases such as this, where a decision of an intermediate appellate court has made it unnecessary for it to reach some issues in that court, we can still decide those issues as long as the factual record developed at the trial level is complete. *See Jager v. State,* 537 P.2d 1100, 1106 (Alaska 1975) (review of decision of Alaska Public Utilities Commission).

13. Mayer testified that she believed the real reason she was fired from Checker Cab was because she was involved in a lawsuit against Checker Cab.

14. We have previously noted that the failure to provide written guidelines concerning hiring criteria lends itself to discriminatory hiring. See note 10 *supra.*

## C. *The Openings*

Yellow Cab also contends that there is no substantial evidence to support the Commission's finding that there were positions available at the company at the time of Mayer's application and that those positions were eventually filled by men. We reject this contention and affirm the Commission's finding.

The evidence established that in Fairbanks the turnover among cab drivers is high, and there is a shortage of cab drivers. Yellow Cab itself experienced a general shortage of drivers. Moore testified that on the date of Mayer's application, December 2, 1975, he did not think there were any openings, although he did not know this for a fact. Mary Knight, Yellow Cab's daytime dispatcher for the past eight years, testified, however, that on the date of the application, there were two openings for night-shift drivers, according to the drivers' log. Additionally, Yellow Cab's payroll data showed that: (1) a termination had occurred in the pay period of November 29, the week before Mayer's application; (2) three males were hired during the pay period of December 6, the week of her application; and (3) two males were hired during the pay period of December 13, the week after her application.[15] This evidence is sufficient to support the Commission's finding that there were openings at the time of Mayer's application.

■ We have concluded that there is sufficient evidence to support the findings that: (1) Mayer, as a female, was a member of a protected class; (2) she applied for a job as a cab driver; (3) she was qualified

and rejected; and (4) after her rejection, the positions remained open and Yellow Cab hired men with her qualifications. Consequently, the superior court's decision is reversed, and the Commission's conclusion of law that Mayer established a prima facie case of discrimination is reinstated. Once Mayer established a prima facie case, the burden shifted to Yellow Cab "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 678 (1973). Yellow Cab did not attempt to present any such evidence. Consequently, we affirm the Commission's decision that Yellow Cab violated AS 18.80.220(a)(1) by refusing to hire Mayer. We remand to the superior court to decide the appropriate damages, including back pay, and remedies.

## ATTORNEY'S FEES

Yellow Cab was awarded attorney's fees and costs pursuant to Civil Rule 82(a). Civil Rule 82(a)[16] permits the award of attorney's fees to the prevailing party. Because of our disposition of this case, Yellow Cab is no longer the prevailing party; consequently, the award of attorney's fees is vacated.[17]

REVERSED in part, VACATED in part, and REMANDED.

CONNOR, Justice, with whom MATTHEWS, Justice, joins, dissenting.

Respectfully, I dissent on the question of whether Mayer effectively applied for the job in question. I do not believe that there was substantial evidence to support the Commission's finding under the legal criteria which should be applied.

---

15. There was also evidence that Yellow Cab had sixteen cab permits, which meant that it could hire thirty-two drivers if it hired two drivers per cab (one for the day shift and one for the night shift). Additionally, backup drivers were commonly hired. On December 2, 1975, Yellow Cab employed only twenty-five drivers.

16. Civil Rule 82(a) provides, in pertinent part:
 (a) *Allowance to Prevailing Party as Costs.*

 . . . . .

 (2) In actions where the money judgment is not an accurate criteria for determining the

fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.

17. The appeal from the Commission to the superior court was brought pursuant to Appellate Rule 45; therefore, Appellate Rule 29(d), not Civil Rule 82(a), governs the award of attorney's fees. *Kodiak Western Alaska v. Bob Harris Flying Service*, 592 P.2d 1200, 1204–05 (Alaska 1979). Thus, the superior court erred in granting an award under Civil Rule 82(a).

I agree with those cases which hold that an applicant need not perform an act which would be futile. But something more definite should occur than in the case at bar before the Commission's complaint procedures are brought to bear against an employer. As the event which triggers the Commission's procedures, the application should be as concrete and definite as possible. Conversely, before an employer is subjected to the substantial burden of defending against a discrimination charge, the application should be definite enough that the employer has notice of the applicant's demands. Otherwise, an indefinite, tentative, or vacuous inquiry can be a trap for the unwary.

A written application would furnish the clearest evidence in this regard. *See, Cedeck v. Hamilton Federal Savings & Loan Ass'n*, 414 F.Supp. 495 (E.D.Mo.1976); *Hockett v. Administrator of Veterans Affairs*, 385 F.Supp. 1106, 1110–12 (N.D.Ohio 1974). I agree that an oral application can suffice in a number of circumstances, but where the facts of the transaction are susceptible to varying interpretations, doubtful points should be resolved against the applicant.

I would thus affirm the judgment of the superior court.