**Claire STRAND and Alaska State Commission for Human Rights, Appellants & Cross-Appellees,**

v.

**PETERSBURG PUBLIC SCHOOLS, Appellee & Cross-Appellant.**

**Nos. 5535, 5824.**

Supreme Court of Alaska.

Feb. 18, 1983.

Carolyn E. Jones, Asst. Atty. Gen., Anchorage, Wilson L. Condon, Atty. Gen., Juneau, for Alaska State Com'n for Human Rights, appellants and cross-appellees.

Linda M. Cerro, Anchorage, for Claire Strand, appellant and cross-appellee.

Mary E. Guss, Ziegler, Cloudy, Smith, King & Brown, Ketchikan, for appellee and cross-appellant.

Before BURKE, C.J., RABINOWITZ, MATTHEWS, and COMPTON, JJ., and SHORTELL, Superior Court Judge.*

* Shortell, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. AS 18.80.220(a)(1) provides:
   (a) It is unlawful for
     (1) an employer to refuse employment to a person, or to bar him from employment, or to discriminate against him in compensation or in a term, condition, or privilege of employment because of his race, religion, color or national origin, or because of his age, physi-

## OPINION

MATTHEWS, Justice.

On June 20, 1977 Claire Strand, a teacher for twenty-five years with the Petersburg Public Schools, filed a complaint with the Alaska State Commission for Human Rights alleging that she had been denied a position as an elementary school principal because of her sex. After a hearing and extensive briefing the Commission determined that a case of discrimination in violation of AS 18.80.220(a)(1) had been established.[1] The Commission awarded Strand the difference between her salary and that of the elementary school principal, and ordered that Strand be hired to the next available administrative position for which she qualified. Petersburg Public Schools appealed to the superior court, and the superior court issued a memorandum of decision and order remanding the matter to the Commission with directions to enter an order dismissing the complaint. Strand and the Commission have appealed to this court.

The circumstances giving rise to Strand's complaint were as follows. On April 12, 1977 the principal of Petersburg Elementary School announced that he would resign his post at the end of the school year. Several applications for the position were received, but due to an informal policy of promoting Petersburg teachers to fill administrative positions, the applications of Strand and Mel Stockton, a high school guidance counselor, were more strongly considered. The parties agree that both Strand and Stockton were qualified for the job, although their backgrounds and experience differed.[2] The Petersburg School

cal handicap, sex, marital status, changes in marital status, pregnancy or parenthood when the reasonable demands of the position do not require distinction on the basis of age, physical handicap, sex, marital status, changes in marital status, pregnancy or parenthood[.]

2. From their personnel files, the following comparison of their backgrounds and experience can be made:

Board, which was responsible for hiring administrative personnel, ultimately selected Stockton to fill the principal's post.

The question presented for review is whether the Commission correctly found that the Board's selection of Stockton in preference to Strand constituted illegal sex discrimination.[3] The standard of review is whether the Commission's findings are supported by substantial evidence. *Alaska USA Federal Credit Union v. Fridriksson,* 642 P.2d 804, 808 (Alaska 1982); *Alaska State Commission for Human Rights v. Yellow Cab,* 611 P.2d 487, 490 (Alaska 1980). We conclude that the Commission's finding that Strand was the victim of discrimination is supported by substantial evidence, including (1) the evidence suggesting that the Board did not compare the personal qualities on which it relied in hiring the successful applicant, Stockton, with the same qualities of Strand, and (2) the evidence that there had been nine persons hired by the Petersburg Public Schools in the past twenty-five years to fill administrative positions, all of them men.

Each of the foregoing bears discussion.

## FAILURE TO COMPARE THE QUALITIES OF THE APPLICANTS

It is undisputed that there were only two formal requirements for the principal's job: a master's degree and a state-issued principal's certificate.[4] The Board had no other guidelines or criteria to aid it in determining which of the two candidates should be selected for the job, and the four Board members expressed different reasons for selecting Stockton rather than Strand. Board members emphasized such attributes as "personality," "tact," "ability to deal with people," "character," and Stockton's rapport with teachers and parents and his leadership ability when explaining why they believed that Stockton was better suited for the principal's job than Strand.

The Commission determined that the Board did not fairly compare the intangible

| STRAND | STOCKTON |
|---|---|
| Type A teaching certificate, elementary. | Type A teaching certificate, secondary. |
| Type B administrative certificate, principal. | Type B certificate, principal. |
| Eastern Washington State College, B.A., Math, 1935. | University of Dayton, B.S., physical education, guidance and counselling, 1964. |
| University of Alaska, M.A., education, 1976, with 3.75 grade point average. 60 additional hours. | Central State University, M.A., education, 1968. |
| 25 years elementary school teaching in Petersburg. | Eight years high school teaching and counselling in Ohio. One year experience as swimming instructor in Petersburg. One year elementary school counselor in Petersburg. Two years high school counselor in Petersburg. |
| Chairwoman of statewide Professional Teaching Practices Commission. President of local teachers' association since 1975. Member of teacher negotiating team. | |

3.  Petersburg Public Schools also raises an issue as to whether the superior court abused its discretion in denying an award of costs and attorney's fees to it as the prevailing party in the intermediate appeal. In view of our decision on the merits we need not reach this question.

4.  Strand's Type B principal's certificate became effective August 1, 1977, nearly two months after the application closing date. However, the beginning date of employment for the principal's position was August 22, 1977, and Strand informed the Board that she would have a certificate by then. The departing elementary school principal had been hired under somewhat similar circumstances. It is thus apparent that Strand met the certification requirement.

personal qualities which it found so desirable in Stockton with the same qualities of Strand. The Commission's analysis is set forth here, for it bears not only on the matter of unequal consideration; it also tends to indicate that the reasons expressed by the Board members for prefering Stockton to Strand are mere rationalizations:

School Board members claim to have based their decision to hire Stockton primarily on his "personality" and counselling experience, finding that he had superior abilities in the areas of administration and working with students, teachers and parents. No comparison was made by the Board members with Strand's ability to work with students, teachers and parents.

. . . .

... When Board members considered the factors they liked in Mr. Stockton, there is no evidence that they asked themselves whether Claire Strand possessed comparable qualities. . . .

Board member Oines, for example, extolled Mr. Stockton's rapport with the children at the elementary school (although Stockton had spent the last two years at the high school). There was no comment made regarding Strand's relationship with the students. Mr. Stockton's ability to get along well with the entire community was mentioned; the Board seemed to ignore the recommendation from Victor Guthrie purportedly setting forth Strand's concern for and ability to work well with the sizable Native community in Petersburg. Nor was Strand's relationship with the community at large explored.

Similarly, while remarking on Stockton's ability to get along with teachers and perform administrative tasks, no evaluation was made by Board members regarding the effect in this regard of

Strand's 25-year acquaintanceship with the Petersburg Elementary School, her three-year presidency of the local teachers' association and her general familiarity with administrative practices through course work, the Professional Teaching Practices Commission, union activities, etc.

Wilmer Oines acknowledged that Strand's long teaching history was a "strong point" for her. He then attempted to discount that strength by referring to the Board's experience with Mel Housley, a teacher who agreed, upon Board request, to fill a superintendent's position only to discover that his aptitude for administration was limited. Strand, of course, had actively sought the post, contrary to Housley. Stockton, moreover, had also "risen" from the teaching ranks. The important point—that Strand was intimately familiar with the children, teachers, routines, problems, strengths and weaknesses of the elementary school—was apparently not afforded much weight.

. . . .

The Commission cannot state that based on the applicants' respective qualifications Ms. Strand was more qualified and should have been selected. However, the Commission can and does find that the one-sided analysis apparently performed by the Board and presented at the hearing constituted an unlawful discriminatory practice. . . .

█ The above discussion by the Commission is an accurate reading of the testimony presented.[5] At the hearing the Board members did emphasize Stockton's leadership traits and his administrative abilities, while making almost no mention as to the presence or absence of comparable charac-

5. The record also suggests that the Board failed to seek additional information to supplement Strand's application, which information would have furthered their comparison of the two applicants. For example, Stockton's superior, the high school principal, personally recommended Stockton to individual Board members, but the Board never inquired of Strand's supe-

rior. Strand's superior testified that, had he been asked, he would have recommended her. The Board's failure to seek additional information regarding Strand's application provides further support for the Commission's findings. *See Alaska USA Fed. Credit Union v. Fridricksson,* 642 P.2d 804, 808 (Alaska 1982).

teristics in Strand. It was permissible for the Commission to infer from this body of testimony that a one-sided consideration of the candidates' comparative qualities was performed. While that was not necessarily the only inference which might be drawn from the testimony, it was a reasonable one, and as such it may not be disturbed judicially.[6]

## THE STATISTICAL EVIDENCE

The Commission also found that nine principals and superintendents had been hired in the Petersberg Public Schools over the period of the past twenty-five years, none of whom were women.

■ In *Brown v. Wood*, 575 P.2d 760, 770 (Alaska 1978) this court stated that once a prima facie case of discrimination is established statistical evidence of a discriminatory pattern "is to be viewed as evidence that the non-discriminatory justification given by the defendant is in fact a pretext."

Strand has established that the Board failed to make a fair comparison of her qualities with those of Stockton; that is more than sufficient to give rise to a prima facie case.[7] The statistical evidence of a pattern of sex discrimination is therefore significant.

The fact that no women have been hired casts in a suspicious light the reasons given by the Board members for preferring Stockton to Strand. If all school administrators have always been men there may have been an understandable tendency to conclude that women do not have the intangible qualities needed to be good administrators, simply because they are not men. Reliance on such factors as personality and leadership may be nothing more than a subconscious perpetuation of sexual stereotypes. The Commission explained quite well the application of this principle to this case:

In the context of human rights law, the particular danger in relying on factors

---

**6.** The heart of the fact-finding process often is the drawing of inferences from the evidence. A fact finder may draw inferences from the words or gestures or inflections or demeanor of a particular witness, may infer a particular basic fact from the testimony of one or more witnesses on one side or on both sides, and may infer an ultimate fact from undisputed basic facts or from an entire record of conflicting evidence.

. . . .

The question for the reviewing court is thus whether the conclusions "reasonably may be based upon the facts proven." The court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported.

4 K. Davis, Administrative Law Treatise § 29.-05, at 137, 139 (1958) (footnote omitted). *See also Alaska State Comm'n for Human Rights v. Yellow Cab*, 611 P.2d 487, 490 (Alaska 1980): "[W]here the evidence is conflicting, the reviewing court will not reweigh the evidence and substitute its judgment for that of the trier of fact. Thus, the evidence should be viewed in favor of the findings even though the reviewing court might have taken a contrary view of the facts." (Footnotes omitted).

**7.** In *Alaska State Comm'n for Human Rights v. Yellow Cab*, 611 P.2d 487, 490 (Alaska 1980) this court adopted the four-part test developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973) as the standard for establishing a

prima facie case under AS 18.80.220. Under the *McDonnell Douglas* test, to establish a prima facie case of discrimination a claimant must show:

(1) that she is a member of a protected class;
(2) that she applied for and was qualified for the position;
(3) that she was rejected despite her qualifications; and
(4) that after her rejection the employer continued to seek a person with her qualifications.

It is conceded that Strand meets the first three requirements of this test, but it is obvious that she cannot satisfy the fourth element. Her rejection occurred simultaneously with Stockton's selection. Nonetheless, the *McDonnell Douglas* test is not the sole means by which a claimant may raise an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13, 36 L.Ed.2d at 677 n. 13; *see also Hagans v. Andrus*, 651 F.2d 622, 625 (9th Cir.1981), *cert. denied*, 454 U.S. 859, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981). A wide variety of evidentiary patterns may suffice to establish a prima facie case; the primary inquiry is whether a claimant has demonstrated circumstances which, if otherwise unexplained by the employer, make it appear likely that impermissible factors played a role in the employer's decision. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957, 967 (1978).

such as "personality", and to a lesser extent on such overbroad categories as ability to work with people and administrative competence, is that the vagueness of these considerations opens the door to discrimination, albeit perhaps, completely unintentional. In [*Kinsey v. First Regional Securities, Inc.,* 557 F.2d 830, 838 (D.C.Cir.1977)], a Black man applied to be a securities salesman with the respondent company; he was rejected. The record indicated that the company required that its sales personnel have the ability to "gain the confidence of prospective clients by exuding integrity, reliability and long-term service." *Id.* at 838. Such attributes are almost as vague as those at issue in this case. The court stated:

> An employer in a profession which traditionally has been white may unknowingly gauge a minority group applicant against the white stereotype, and conclude that he lacks the intangible qualities indicative of professional aptitude and competence....

Here, there is a real danger that given the fact that the positions of principal for both the elementary and high school, as well as the superintendent's position, have always been occupied by men, the Board may have been predisposed to find the attributes it was looking for in a man, rather than a woman. This danger was compounded by the lack of interviews with the applicants, and the fact that complainant's long tenure with the District as a teacher may have made it difficult for Board members to conceptualize her in an administrative role. They never discussed what plans either she or Mr. Stockton might have for improvements or changes in the current school program.

## CONCLUSION

The Commission's decision is supported by substantial evidence. Its finding that the Board did not fairly compare the personality characteristics on which it relied in hiring Stockton with those of Strand is a permissible inference which tends to indicate sex discrimination. Further, the evidence that no woman had been hired as a principal or superintendent in Petersburg in twenty-five years supports the same conclusion. The evidence adduced by the Board as to its reasons for selecting Stockton rather than Strand consists of nothing more than vague generalizations concerning personality traits. That evidence is neither so powerful nor so persuasive as to render the evidence supporting the Commission's findings insubstantial in light of the entire record. Accordingly we reverse the decision of the superior court and reinstate the order of the Commission.

REVERSED.

RABINOWITZ, Justice, dissenting, joined by BURKE, Chief Justice.

I dissent from the court's decision to uphold the Commission's finding that Strand was the victim of discrimination. In my view, the Commission's critical findings are not supported by substantial evidence. Thus, I would affirm the superior court's order remanding the case to the Commission with directions to enter an order dismissing the complaint. My reasons are as follows.

After *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which announced the prima facie approach to discrimination suits, the Supreme Court was faced with a series of cases in which it was asked to decide what kind of, and how much, evidence an employer must adduce in order to prevail in a case in which an aggrieved woman or minority has presented a prima facie case of discrimination. In *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), the Court issued the first of its explanations of the task of an employer faced with a prima facie case of discrimination:

> We think the Court of Appeals went awry, however, in apparently equating a prima facie showing under McDonnell Douglas with an ultimate finding of fact as to discriminatory refusal to hire under Title VII; the two are quite different

and that difference has a direct bearing on the proper resolution of this case . . . .

. . . . .

When the prima facie case is understood in light of the opinion in McDonnell Douglas, it is apparent that the burden which shifts to the employer is merely that of proving that he based his employment decision on a legitimate consideration, and not an illegitimate one such as race.

*Id.* at 576–77, 98 S.Ct. at 2949–50, 57 L.Ed.2d at 967–68. Five months later, in *Board of Trustees v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (per curiam), the Supreme Court went on to explain what it meant in *Furnco* when it stated that the employer must "prove" that it based its employment decision on a legitimate consideration. The Supreme Court said that it did not mean "prove"; rather, that "we think that there is a significant distinction between merely 'articula[ting] some legitimate, nondiscriminatory reason' and 'prov[ing] the absence of discriminatory motive.' By reaffirming and emphasizing the McDonnell Douglas analysis in Furnco . . . we made it clear that the former will suffice to meet the employee's prima facie case of discrimination." *Id.* at 25, 99 S.Ct. at 295, 58 L.Ed.2d at 219. The Supreme Court expressly rejected the proposition that an employer must disprove discriminatory intent in order to prevail in the face of a prima facie case of discrimination.

Finally, in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), a unanimous Supreme Court explained that an employer not only need not disprove discriminatory motive but also need not prove that its articulated reason for rejecting the minority or female applicant actually existed. The holding in *Burdine* is that an employer need not prove by even a preponderance of the evidence the existence of a legitimate reason for rejecting the disappointed applicant; rather, it need only articulate a legitimate reason in order to overcome a prima facie case of discrimination.

The net result is that in a situation in which the employee has presented a prima facie case of discrimination and the employer has stated a reason for its hiring decision, and the stated reason has not been discredited, the employer wins. Under the Title VII test the prima facie case alone is not substantial evidence of discrimination if the employer has explained the basis for its decision and if that explanation has not been discredited. In my view of the record that is the status of the case at hand.[1]

The testimony of the four Board members—two women and two men—sets forth the reasons why Stockton rather than Strand was hired for the principal's post. The reasons articulated by the Board members for their choice were legitimate, nondiscriminatory reasons for selecting Stockton, and there is no indication in the record that those stated reasons were fictitious or mere pretexts.[2]

---

1. Admittedly, federal Title VII law is not conclusive in this case, but this court has already stated that it will apply Title VII standards in cases arising under Alaska's antidiscrimination statute. Thus it seems to me that the complete Title VII test and not just selected portions of it should be applied.

2. The final step in the Title VII analysis requires the person alleging discrimination to discredit the employer's articulated reasons for the hiring decision. *See Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094, 67 L.Ed.2d at 217. In this case the Commission never reached this step in the analysis.

Originally, the Commission concluded that Strand had not proven her claim, and ruled in favor of Petersburg Public Schools. On motion

for reconsideration the Commission changed its mind and concluded that evidence of subjective hiring practices sufficed to establish a prima facie case of discrimination. In considering the Board's rebuttal evidence, however, the Commission misconceived the nature of the task of an employer faced with a prima facie case of discrimination.

The Commission ruled that the Board had not rebutted Strand's prima facie case "by even a preponderance of the evidence." In support of this conclusion the Commission stated, in effect, that the Board had failed to explain why it applied subjective hiring criteria or neglected to give Strand's application the same attention given Stockton's. Under the Title VII test, however, the Board's task was not to explain away the elements of Strand's prima facie case

First, Board members testified that Stockton's experience as a counselor [3] made him a more desirable candidate than Strand for the principal's position.[4]

Second, they explained that Strand had once acted in an unprofessional manner during negotiations with the Board and that they felt this kind of behavior was unsuitable in a person who aspired to the position of principal.

Third, Board members testified that although they were aware that Strand was an excellent teacher, the Board had once hired an accomplished teacher as an administrator and were disappointed with his performance. From this the Board concluded that many years' experience as a teacher is not necessarily indicative of competence in an administrative role.[5] In my view, each of these explanations is a legitimate, non-discriminatory reason for selecting Stockton rather than Strand.

Additionally, I think it appropriate to address two arguments Strand has made concerning the Board's alleged unequal consideration of her application. Strand argues first that the Board should have considered her leadership in professional organizations [6] as providing administrative experience similar to that obtained by Stockton in his counseling jobs. Absent some indication that an employer's assessment of the relative values of candidates' backgrounds is merely a pretext, however, this court should not substitute its judgment for that of the employer, and should not permit the Commission to do so. I thus reject Strand's argument—a subjective conclusion in itself—that the Board should have given greater weight to her participation in professional organizations.

Second, Strand argues that the Board's failure to have an amount of information available about her which was comparable to that which it had about Stockton, and to have substantially similar information

—i.e., subjective hiring criteria and lack of attention to Strand's application—but rather to state a valid reason why it selected Stockton rather than Strand. That the Board did, and that is all the Title VII test requires the Board to do.

Perhaps the most telling evidence of the defects in the Commission's reasoning is the Commission's concluding statement that "the evidence established only that the hiring procedures were defective as applied to Strand." Alaska law does not proscribe careless personnel practices; it proscribes discriminatory hiring. Although haphazard practices may be used as part of a prima facie case to raise an inference of discrimination, once an employer explains the basis for his decision it should not matter that its procedures were defective. In other words, once the employer demonstrates by articulating the bases of its decision that it was reached "on the merits"—and not on the basis of gender—the employer is entitled to prevail under the Title VII test. The fact that the employer's hiring procedures were haphazard is not, in and of itself, a separate offense under Alaska's antidiscrimination statute.

3. At the time he was promoted to principal, Stockton was a high school counselor; he had previously worked as an elementary school counselor.

4. *See, e.g.,* "[H]is ability to counsel and the results of his counseling ability to me, was a very important part;" Stockton's counseling experience was "a very big plus;" "[W]e also

felt that his counseling and his tact and his own personality in dealing with the people would be more important as a principal." Although it is possible, of course, to say that the Board should not have given such great weight to Stockton's positions as counselor, it seems to me that it is neither this court's job, nor the Commission's, to second-guess employers' beliefs about the relative merits of candidates' backgrounds. In any event, additional testimony in the record corroborates the Board's belief that a position as counselor is considered in the profession to be an intermediate step between teacher and administrator. "[M]y experience with high school counselors is that it is practically the same as vice-principal.... I consider that part of my decision in this was that high school counselor is basically and [sic] administrative role."

5. Perhaps it was unfair of the Board to assume that its prior experience with a teacher in an administrative role meant that teachers do not necessarily make good administrators. However, Alaska law does not proscribe hiring decisions based upon erroneous generalizations or stereotypes which are not based on gender.

6. Strand had been chairperson of the statewide Professional Teaching Practices Commission, president of the local teacher's association, and a member of a teachers' salary negotiating team.

available about each candidate, is evidence of the Board's discriminatory motives.[7] I note that each of the four Board members testified that he or she was personally acquainted with both Strand and Stockton, and was familiar with Strand's and Stockton's abilities.[8] The record reflects that the Board members assumed that they had sufficient information available about both candidates to forego conducting formal interviews and requesting additional information from either Strand or Stockton. Although the Board's hiring procedures were unduly haphazard for a position of such great responsibility, there is no evidence in the record that the hiring procedures were intended to, or did, slight Strand's application.

I agree that statistical evidence can be relevant—and, sometimes, persuasive—in a discrimination case. Nevertheless, there simply is no statistical evidence of discrimination in this case.

The fact that the Petersburg School System had not hired a female principal is in my view of little significance. That fact alone says nothing about discriminatory practices. Without information regarding the number of applicants for a given position and about the gender composition of the applicant pool, it is meaningless to state

that an employer's past hiring decisions are evidence of discrimination. Obviously, if there were no qualified women in the applicant pool the fact that only men were hired indicates nothing about the employer's preferences.

In addition, the record in this case refutes any claim based upon statistical evidence. When the Board advertised the vacancy in the principal's post, it received fourteen applications, in addition to those of Strand and Stockton, in response. All but one of those applications were from men; the gender of the fourteenth applicant is not ascertainable. I have a great deal of difficulty concluding that an employer who rejects thirteen, perhaps fourteen, men and one woman has thereby demonstrated its intent to discriminate on the basis of gender.

In conclusion, review of the record has convinced me that the Board members articulated legitimate, nondiscriminatory reasons for their unanimous decision to hire Stockton rather than Strand. Each Board member recognized that Strand was an experienced, capable teacher; the record reveals that the Board considered Stockton's experience as a counselor to be more suitable training for the principal's post than was Strand's teaching experience and her participation in professional organizations.

---

**7.** Failure to seek additional information to supplement a woman's application may, in an appropriate case, tend to show that an employer did not give the application serious consideration. *See Alaska USA Federal Credit Union v. Fridricksson*, 642 P.2d 804, 808 (Alaska 1982). Such is not the case here.

Board members were supplied the complete files available on Strand and Stockton. Although the files did not contain equivalent information about each candidate—Strand's file, unlike Stockton's, contained uninformative medical reports, and Stockton's file, unlike Strand's, contained letters of recommendation submitted five years earlier by Ohio educators in support of Stockton's application for a job in Petersburg—there is no indication in the record that the Board made unwarranted assumptions about either candidate because of lack of information.

Strand also points out that Stockton's superior, the high school principal, took upon himself the task of speaking to Board members and recommending Stockton, but that the Board never inquired of Strand's superior. Strand's

superior testified that had he been asked, he would have recommended her. Nonetheless, in light of the Board members' assumption that they were familiar with Strand's and Stockton's qualifications, and their uniform testimony that they were aware that evaluations of Strand were excellent, I cannot say that the Board failed to compare fairly Strand's assets with Stockton's.

**8.** Board member Enge testified that she and Strand were "old friends and close friends" and that her four children had been in Strand's classes. Board member Norheim testified that she had known Strand and Stockton since they arrived in Petersburg. Board member Dean testified that he had known Strand since he came to Petersburg in 1961. Board member Oines testified that he had known Strand for thirty years, and that both Strand and Stockton "were well known people in the community." The Board members' testimony also uniformly reflects that the members were aware that Strand was a capable, well-respected teacher.

I need not agree with the Board's assessment of the relative values of Strand's and Stockton's varied experiences to conclude that the Board's explanation of its hiring decision is sufficient to dispel the inference of discrimination raised by Strand's prima facie case. There has been no showing that the reasons offered by the four Board members for selecting Stockton rather than Strand were pretextual or otherwise lacked credibility. Thus I agree with the superior court's determination that the Commission's finding of discrimination is not supported by substantial evidence.